FRANK E. MOORES ET AL. V. STATE OF NEBRASKA, EX REL.
WILLIAM H. SHOOP ET AL.

FILED APRIL 8, 1898. No. 9724.

1. **Metropolitan Cities:** REMOVAL OF OFFICERS. By section 169 of chapter 12a of the Compiled Statutes of 1897 the power to appoint and remove officers and members of the fire and police departments in cities of the metropolitan class is vested in the fire and police commissioners of such cities.

2. ——: ——. No member of the fire or police department in any such city can be discharged for political reasons.

3. ——: ——. Removals deemed necessary for the proper management, discipline, or more effective service of either fire or police department must be made pursuant to such rules and regulations as may be adopted by the board of fire and police commissioners for that purpose.

4. ——: ——. Before an officer or member of either the police or fire department can be discharged for alleged misconduct, unfitness, dereliction of duty, or other cause affecting his character or standing as a public servant, charges must be filed against him and he must be afforded an opportunity to be heard in his defense.

5. ——: ——. But the right of an officer of the police force or member of the fire department to defend against formal charges, within the meaning of the law, is a right to vindicate himself from an unjust accusation; not a right to show that the public welfare requires his retention in the public service or that the revenues at the disposal of the board are adequate for the payment of his salary.

6. ——: ——. The membership of either the police or fire department may be reduced by the board on economic grounds, and in such case men may be dismissed from the service without a hearing and without an opportunity being given them to show cause against the order of dismissal.

7. **Transcript for Review.** The transcript brought to this court should contain only so much of the record of the district court as is essential to a correct understanding of the case.

ERROR from the district court of Douglas county. Tried below before SCOTT, J. *Reversed.*

*W. J. Connell,* for plaintiffs in error.

*McCoy & Olmsted, contra.*

SULLIVAN, J.

The relators were police officers of the city of Omaha, and being dismissed from service applied to the district court of Douglas county for a writ of mandamus to compel the respondents, as members of the board of fire and police commissioners, to reinstate them. An alternative writ was issued, an answer was filed, and a trial had, which resulted in the allowance of a peremptory writ as prayed. The respondents complain of the judgment and ask that it be reversed. The relators were dismissed from the police force under the authority of the following resolution adopted by the board: "Whereas, the fund provided by the mayor and the city council to maintain the police department is wholly insufficient to pay the salaries of the present police force, and the continuance of the force now in the employ of the city will create an overlap in an amount exceeding the sum of $3,400, which is wholly unauthorized under the laws controlling the action of the board, it therefore becomes the duty of this board to dismiss such a number of officers and patrolmen as will bring the expenditures within the limit of the funds placed at its disposal. Therefore, this board considers, finds, and declares that the proper management of said police force requires that the following officers and patrolmen be removed from their several offices, to-wit.: Sergeants, F. D. Mitchell and R. W. Chamberlain; detectives, E. H. Hemming and W. W. Cox; patrolmen, W. H. Shoop, R. A. Wilbur, James Kirk, and S. G. Hoff. It is therefore ordered that the foregoing officers and patrolmen be removed from their respective offices, to take effect upon and after September 30."

The contention of the relators is that the adoption of the foregoing resolution and the action taken in pursuance thereof were in violation of the provisions of section 169 of the city charter, which is in part as follows: "All powers and duties connected with and incident to the appointment, removal, government, and discipline of the

officers and members of the fire and police departments
of the city, under such rules and regulations as may be
adopted by the board of fire and police commissioners,
shall be vested in and exercised by said board.   *   *   *
The chief of police and all other police officers, police-
men and police matron, shall be subject to removal by
the board of fire and police commissioners, under such
rules and regulations as may be adopted by said board,
whenever said board shall consider and declare such
removal necessary for the proper management or dis-
cipline, or for the more effective working or service of
the police department. No member or officer of the
police or fire department shall be discharged for political
reasons, nor shall a person be employed or taken into
either of said departments for political reasons. Before
a member of the police or fire department can be dis-
charged, charges must be filed against him before the
board of fire and police commissioners and a hearing
had thereon, and an opportunity given such member to
defend against such charges, but this provision shall not
be construed to prevent peremptory suspension of such
member by his superiors in case of misconduct or neglect
of duty or disobedience of orders." This statute plainly
vests the power to appoint, remove, and exercise a gen-
eral supervision over police officers in the board of fire
and police commissioners of the city. It provides that
the members of the police department shall be subject to
removal whenever, in the judgment of the board, such
removal shall be necessary for the proper management,
discipline, or more effective service of the department.
It then declares that no officer shall be discharged for
political reasons, nor without a formal accusation filed
with the board, a hearing given, and an opportunity
afforded such officer to make a defense.

The respondents having been dismissed from the ser-
vice without a hearing or an opportunity to be heard,
the question, and the only one presented by the record for
decision, is whether the action of the board was forbid-

den by the above quoted provision of the charter. It is not claimed that the dismissal was for any reason other than the one stated in the resolution, and the respondents in their answer alleged, and at the trial offered to prove, that the motive there assigned was the true and only motive for the action taken. But relators insisted, and the trial court ruled, that they were entitled to a hearing regardless of the grounds upon which the board proceeded. We cannot accept this view of the law. These officers were not discharged within the meaning of the term as used in the statute. The places which they filled were abrogated. They were not dismissed to make room for others or because they were deemed unfit to be retained in the service. They lost their places because their places ceased to exist. The matters recited in the resolution as the basis for the action of the board can by no just interpretation be held to constitute a charge against these men. It imputes to them no official misconduct or dereliction of any kind; no unfitness or want of capacity. It touches in no way the private or official character of any of them. That the city authorities failed to make an appropriation adequate to the requirements of the police department is not a charge against officers whose services are dispensed with for want of sufficient funds with which to pay their salaries. The board may, undoubtedly, on economic grounds dismiss police officers without a hearing. The right given to an officer by the statute to a hearing and an opportunity to defend is manifestly a right to vindicate himself from an unjust accusation, and not a right to show that the revenues are sufficient to pay his salary or that the public weal requires that his place be not abolished. (*Phillips v. Mayor*, 88 N. Y. 245; *People v. Mayor of Brooklyn*, 149 N. Y. 215, 43 N. E. Rep. 554.) Speaking of the general policy of a statute like the one here considered and the cases to which it was applicable, the New York court of appeals, in the case of *Lethbridge v. Mayor*, 133 N. Y. 232, 30 N. E. Rep. 975, uses the following language: "The limitation contained in this statute

is in the interest of the public, which is best promoted by keeping in the service honest clerks who have attained experience in their employment; and besides, it is a matter of justice to the employé himself, whose summary displacement, and the appointment of another in his place, may give rise to an implication of infidelity or unskillfulness on his part, which an examination and explanation might have wholly dispelled. But no such reasons exist when a clerk is discharged from the public service because the moneys appropriated by the body charged with that subject are insufficient to keep up the clerical force to the standard which had obtained when larger appropriations were made, or when for such cause his services are no longer needed. The notice is indispensable, and an opportunity should be afforded to the clerk to make an explanation when such explanation might prevent the proposed removal. It is quite evident that the section applies only to cases where the removal is proposed to be made without just cause personal to the party, or when it is sought arbitrarily, and without adequate reason, to substitute another person in the place of the one proposed to be removed."

Counsel for relators contend that this court cannot review the judgment because the clerk of the district court failed to certify that the record contains a transcript of all the proceedings. A formidable array of cases from other jurisdictions has been marshaled in support of this contention; but the rule in this state has been settled the other way. This court has repeatedly held that the record brought here should contain only what is essential to a correct understanding of the case. (*Morgan v. Larsh,* 1 Neb. 361; *Smith v. Fife,* 2 Neb. 10; *Galley v. Galley,* 13 Neb. 200; *Hilton v. Bachman,* 24 Neb. 490.) Our conclusion is that the facts stated in the alternative writ do not show that the relators are entitled to any relief. The judgment of the district court is therefore reversed and the proceeding dismissed.

REVERSED AND DISMISSED.

NORVAL, J., dissenting.

I dissent from the judgment just rendered herein, although heartily agreeing with the majority that a member or officer of the police department of a city of the metropolitan class cannot be discharged from the service upon political grounds; that removals essential to the proper management, discipline, or the more effective service of said department must be made pursuant to such rules and regulations as may be adopted for that purpose by the board of fire and police commissioners; and that no member of the police force of said city can properly be discharged for alleged misconduct, unfitness, dereliction of duty, or other cause affecting his character or standing as a public servant, except upon charges preferred against him, and after a notice and hearing. Conceding the soundness of the proposition enunciated by my associates that the services of a member of a police force of the city of the class to which Omaha belongs may be dispensed with, without formal charges having been made or an opportunity to be heard, where the ground of discharge is that the revenues of the city available for the support of the department are inadequate for the payment of his salary, nevertheless the action of the respondents in attempting to remove the relators from their offices, in my judgment, was unauthorized and illegal. If the discharge of these members of the police force was on economic grounds, as assumed in the majority opinion, the permanent relieving them of their positions by the board of fire and police commissioners was wholly unwarranted. Relators, at most, could have been suspended from their respective positions until such time as the funds at the disposal of the board were sufficient to meet the expenses of the department without a reduction of the force. (*Lethbridge v. Mayor*, 30 N. E. Rep. [N. Y.] 975.) The intention and purpose of the legislature were to place the police department of a city of the metropolitan class under civil service rules. This

is obvious from the mere reading of the provisions of the charter governing such a city. Section 169, chapter 12a, Compiled Statutes, declares that "all powers and duties connected with and incident to the appointment, removal, government and discipline of the officers and members of the fire and police departments of the city, under such rules and regulations as may be adopted by the board of fire and police commissioners, shall be vested in and exercised by said board. * * * The chief of police and all other police officers, policemen and police matron, shall be subject to removal by the board of fire and police commissioners, under such rules and regulations as may be adopted by said board, whenever said board shall consider and declare such removal necessary for the proper management or discipline, or for the more effective working or service of the police department. * * * It shall be the duty of said board of fire and police commissioners to adopt such rules and regulations for the guidance of the officers and men of said department, for the appointment, promotion, removal, trial, or discipline of said officers, men and matron, as said board shall consider proper and necessary." It is also enacted that appointments and removals shall not be made for political reasons. Section 187 provides for the creation of a police relief fund by assessing each member of the police force not exceeding a certain sum, to be deducted from the monthly pay of each member, to be paid into the city treasury and to be used exclusively to relieve members of the force when sick or permanently disabled, for funeral expenses, relief of their families in case of death, or for pensions for those honorably retired from the service. Other sections of the same act authorize the investment of the moneys thus raised, and section 191 provides for the pensioning of the officers and members of the police department who become bodily disabled while in the line of official duty, as well as those who have served faithfully for a specified number of years, and who have reached a certain age.

These several provisions, which are substantially like those contained in the prior act governing cities of the metropolitan class, show that merit and the effectiveness of the public service should alone control in the appointment of the officers and members of the police department, and that removal should not be effected except when essential to the proper management or discipline, or for the more effective workings or service of the department. If members or officers can be permanently discharged or removed from their positions without cause, then the provisions relating to pensions are a delusion and a snare. The court of appeals of New York, in discussing a similar question, in *People v. Hayden*, 133 N. Y. 198, used this apposite language: "The learned counsel for the defendant seems to concede in his argument that the provisions of section 42, title 11, of the charter, providing for pensions to members of the police force on account of injury, long service, or inability caused by long service or age, for the benefit of themselves or their families, constitute a privilege which attaches to the office of boiler inspector also, under the terms of the statute. If this is so, it furnishes a very strong reason why the relator should be exempt from an arbitrary dismissal without cause and at the mere will of the appointing power. The rights and privileges of receiving a pension from the government, based upon long service, carries with it the idea of permanency in the service for which the pension is ultimately granted. Such a right or privilege, whatever it may be called, cannot well exist with the power to defeat it at any time before the expiration of the necessary period of service by a discharge of the incumbent without cause and without notice or an opportunity to be heard." It is very evident that employment of the members of the regular police force can be terminated on economic grounds only by suspension from duty and the dropping of the names from the payroll until such time as the revenues are sufficient to meet the expenses of the department. The order in this

case discloses the absolute removal or discharge of relators and not merely their temporary suspension until their services should again be needed, which action was illegal and void. Doubtless, the board of fire and police commissioners may, by suitable rules and regulations, provide for the appointment of special policemen whenever an exigency therefor exists, and may also permanently dispense with their services when no longer required.

The statute, as will be observed, requires the board of fire and police commissioners to adopt suitable rules and regulations governing appointments and removals of members of the police department. All dismissals from the service, whether on the ground that the revenues at the disposal of the board with which to maintain the department are exhausted, or because of misconduct, unfitness, or dereliction of official duty, must be made in accordance with rules and regulations adopted by the board. There is no pretense in this case that any such rules or regulations have been promulgated by the board, or that the employment of relators was terminated in pursuance thereof. The board possesses limited powers, and it must affirmatively appear that it has acted within the scope of the authority conferred. Presumptions cannot be indulged in favor of the validity of its acts.

Again, it does not appear that relators were discharged from their positions on economic grounds. It is true the preamble to the order of dismissal recites that the funds at the command of the respondent were insufficient to maintain the police force then existing, but the finding upon which the order in question was based proceeds upon a different ground. It states "this board considers, finds and declares that the proper management of said police force requires that the following officers and patrolmen be removed from their several offices." This is equivalent to a declaration that relators were discharged or removed for some alleged misconduct, unfitness, or dereliction of duty; yet no charges were preferred against

them. Therefore they could not be lawfully dismissed without a notice and hearing.

It is said the relators were not discharged, but that the places which they filled were abrogated and ceased to exist. This court ought not to so declare, since the answer or return of the respondents to the alternative writ admits the removal of relators from their several offices, and the order of dismissal states "that the foregoing officers and patrolmen be removed from their respective offices." The word "removed," in the sense employed in this order, is equivalent to "discharged." There is no averment, nor evidence to establish, that the positions were abolished. For the reasons stated the judgment of the district court should not be disturbed.