PEOPLE ex rel. HARTOUGH v. SCANNELL.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. MUNICIPAL CORPORATIONS—EMPLOYÉS—REMOVAL.

Laws 1896, c. 821, forbidding the removal of Union veterans holding salaried positions by appointment under municipalities, except after a hearing on due notice, does not prevent municipal authorities from removing a veteran by abolishing his office in good faith, on grounds of economy,

and transferring his duties to others, who are retained, and required to perform such duties in addition to their other duties.

**2. SAME.**

Greater New York Charter, § 127, providing that all veterans who cannot, under existing laws, be removed, except for cause, shall be retained in like positions under the new city, does not alter the rule that municipal authorities may remove a veteran from his position by abolishing it in good faith, on economic grounds.

**3. SAME.**

The removal of 17 honorably discharged Union veterans from their positions as fire-hydrant inspectors in Brooklyn, by the abolishment of their positions for economic reasons, and to secure uniformity in methods of inspection, is not, when standing alone, evidence of bad faith on the part of the commissioner in removing them.

**4. SAME.**

Laws 1894, c. 104, authorizing the fire commissioner to appoint such laborers as may be "necessary for the inspection of fire hydrants," does not prevent him from abolishing the position on economic grounds, after it has been filled by appointment.

Appeal from special term, Kings county.

Application by the people, on the relation of Walter B. Hartough, against John J. Scannell, as fire commissioner of the city of New York, for a writ of mandamus to reinstate the relator as a laborer in the fire department. From an order denying the writ and a judgment for costs, the relator appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Hugo Hirsh, for appellant.

William J. Carr (Luke D. Stapleton, on the brief), for respondent.

GOODRICH, P. J. The relator, claiming to have been unlawfully removed in January, 1898, from a position in the fire department of the city of New York, applied for an order requiring the fire commissioner to show cause why a peremptory writ of mandamus should not issue to restore him to the position theretofore held by him as laborer in the fire department, and to assign him to the duties of inspector of hydrants, or to such other service or duty as the court might deem proper. The defendant fire commissioner, through the corporation counsel, filed a return to the application, and at the hearing the court directed that an alternative writ issue. Such writ was issued, and a new return was made by the defendant. At the trial, without a jury, the court dismissed the alternative writ of mandamus, and gave judgment against the relator for costs. From such judgment the relator appeals.

The parties agreed upon a statement of facts, which may be condensed as follows: The relator is a resident of the borough of Brooklyn, and an honorably discharged Union soldier of the Civil War. On December 29, 1894, under chapter 104 of the Laws of that year, the fire commissioner of Brooklyn appointed the relator as a laborer in the fire department, for the purpose of inspecting fire hydrants, at three dollars per day, the time not being fixed by statute or otherwise. His duties were those required by the act. He was assigned to duty, and continued in the discharge thereof

up to January 19, 1898, when he received from Mr. Tully, the deputy
fire commissioner of the boroughs of Brooklyn and Queens, a notice·
saying that, "in the absence of any provision in the charter of the
city of New York authorizing the inspection of fire hydrants by
employés of this department, you are notified to report for duty
to the commissioner of the department of water supply." On the
same day he reported accordingly, and was informed that such
transfer was irregular, and that he could not be received there. He
reported back to the fire department, and on January 20th the de-
fendant sent him the following discharge: "Inspector of fire hy-
drants is hereby discharged the service of the department, to take
effect from 4 p. m., January 18, 1898." This discharge was made
without notice to the relator, and without cause assigned, charges
made, or hearing had. At the time of the relator's discharge there
were in the fire department a number of laborers, not veterans,
none of whom performed the work of inspecting fire hydrants.
Sixteen other veterans of the same class as the relator were dis-
charged at the same time, while seventy-nine laborers, not veter-·
ans, were retained. Since such discharge, duties similar to those
of the relator have been performed by persons not veterans, in
the uniformed force of the fire department, some of whom were
in the service before the relator's discharge, and others of whom
were appointed subsequently. On January 26th rules as to the
regulation of fire hydrants in the boroughs of Brooklyn and Queens,
similar to those previously in force in the old city of New York, were
promulgated. These rules cover the duties performed by the re-
lator, and require the performance of such duties by the fire com-
pany commanders and their subordinates. By section 469 of the
Greater New York charter, the commissioner of water supply had
control of the fire hydrants, and, under section 750, power was given
to the fire commissioner to take all proper measures to keep the
hydrants in good condition. The relator has demanded of the fire
commissioner reinstatement to the position from which he was re-
moved, or to a position as laborer in said department, and the de-
mand has been refused. The appropriations for the pay of laborers
of the department for the borough of Brooklyn have been made
before and since the discharge. There is now no hydrant inspec-
tion in the fire department other than inspection by the uniformed
fire force, and no "hydrant inspectors," so called, and there is no
appropriation for the position of fire inspector as such. There was
evidence at the trial that the relator's pay was increased on De-
cember 1, 1897, from three dollars per diem to eleven hundred dol-
lars per annum, and that, under section 1536 of the charter, by ac-
tion of the mayor, the officers, members, subordinates, and employés
of the fire department of Brooklyn were transferred to the fire de-
partment as constituted by the charter, and assigned to duty in the
borough of Brooklyn, under the same positions as they, respectively,
were holding previously to the said action of the mayor. The fol-
lowing occurred at the trial, and is taken from the record:

"The Court: There is no charge here, as I understand it, of any bad faith
on the part of Commissioner Scannell; that it was a case where, in his judg-

ment, it was wise to dispense with the service of seventeen laborers. Mr. Hirsh: I am willing to concede that the commissioner, in good faith, wanted to discharge seventeen persons who labored in the repair shop, call them what you please. Mr. Stapleton: Who were appointed by an appointment similar to Mr. Hartough, the relator in this proceeding."

Mr. Short, foreman of the Brooklyn repair shop for fire hydrants, etc., in the water department, testified that the men under him inspect fire hydrants and repair them whenever the foreman of the several fire companies report to his department anything out of order in such hydrants. Mr. Murray, deputy chief of the fire department, testified that the city is laid out in districts, and that the foreman of the fire company in each district is responsible for the care of the hydrants in the district, and details some member of his company to inspect and report as to them, but that there is no one in the fire department who performs, in their entirety, the duties that had been performed by the relator. The return of the defendant to the alternative writ sets up that the control of fire hydrants is in the commissioner of the department of water supply; that there were in such department, at the time of the relator's discharge, a sufficient number of men engaged in the inspection and repair of hydrants; that the position of the relator was necessary no longer; and that he abolished the same for reasons of economy, and consequently discharged the relator. The return also sets up that, for purposes of uniformity, the rules existing in the boroughs of Manhattan and the Bronx, and providing that the uniformed force of the fire department should inspect the hydrants, were extended to the boroughs of Brooklyn and Queens, and that this has been done by such force; that when the relator was discharged there was no work in the fire department requiring his services as laborer or otherwise; and that the relator did not make any other claim that there was any work to be performed in the department, except the duty of inspecting fire hydrants in Brooklyn.

The learned court at special term rendered the following decision:

"I decide that the relator is not entitled to the relief sought, and that the proceedings should be dismissed, upon the following grounds: While the relator was a laborer, as distinguished from the clerical force, he belonged to a class by itself, for all the purposes of this proceeding. He was appointed by virtue of a statute which authorized appointments of fire hydrant inspectors only. It is not material that his duties are to be classed as labor, and the fact that other nonveteran general laborers have been retained while he has been removed does not affect his right to relief. The service which the relator performed has been, whether wisely or not is not material, to some extent dispensed with by the present city government, and the fire commissioner has in good faith, for the purposes of economy, imposed the duties of that service, so far as it is now performed at all, upon the uniformed force of the department."

The relator contends—First, that the duty of inspecting fire hydrants is imposed by the charter of the city of New York upon the fire department, and that such duty is performed by members of the department (this does not seem to be controverted by the corporation counsel); second, that, this duty having been imposed on laborers in the department, the latter must continue to employ laborers for that purpose; third, that the relator, being a veteran,

cannot be summarily removed from his position except after hearing upon due notice; fourth, that the charter (section 1536) exempted veterans in the fire department from the provisions as to transfers, and that the relator was entitled to be continued in his previous position; and, fifth, that the relator was 'not an official, but simply a laborer, and that there was no office to abolish.

The real question involved in the relator's points is whether or not, under chapter 821 of the Laws of 1896, the fire department had the right to abolish the position held by the relator, without notice and hearing, so long as other laborers, not veterans, were retained in the service. This question was set at rest by People v. City of Brooklyn, 149 N. Y. 215, 43 N. E. 554, where the court held, as to acts forbidding the removal of veterans holding salaried positions, except for cause shown and after hearing, that such acts were not intended to give occupants of such positions life tenures where, upon grounds of economy or for other proper reasons, the offices or positions were abolished in good faith; that a veteran might be removed for the reason that the position which he occupied was abolished on economical grounds, and that its duties might be attached to an existing office held by a person not a veteran; and that such removal was not a violation of the statutes relating to veterans. See, also, In re Breckenridge, 160 N. Y. 103. 54 N. E. 670; In re Kelly, 42 App. Div. 283, 59 N. Y. Supp. 30. The act of 1896, passed subsequently to that decision, contains provisions similar to those in the previous acts referred to, viz. that veterans shall not be removed except after a hearing upon due notice; but we find no legislation which changes the rule announced, that a removal may properly be made when the position is abolished on economical grounds. Section 127 of the Greater New York charter does not alter this rule. The section was under consideration in People v. Van Wyck, 157 N. Y. 495, 52 N. E. 559, where the court said that its purpose was to continue in the service of the city such veterans as would have been entitled to remain in office had the new charter not been passed, and that the section did not add to or take from the veteran statutes. This doctrine was applied by this court in People v. Coler, 38 App. Div. 615, 56 N. Y. Supp. 943. We are thus left to the question whether the position which the relator had was abolished in good faith and for reasons of economy. This was a question of fact. It appears that 16 other veterans, occupying positions similar to that of the relator, were removed in January, 1898, and that there was evidence tending to show that this was done so as to bring about uniformity in the rules and method of inspecting fire hydrants over the entire city by extending over Brooklyn and Queens the rules which had been in existence for many years in the old city of New York, the duty in the boroughs of Brooklyn and Queens being devolved upon the fire department instead of the water department, and that this was done from motives of economy. In such a change, standing alone, we can see no evidence of bad faith on the part of the commissioners; and the relator's counsel, in answer to a question of the court, conceded that the commissioners in good faith

wanted to discharge 17 laborers in the repair shop. This condition of affairs would seem to eliminate all charge of bad faith, and to leave only the question of abolition of the position of the relator and the others for economical reasons. Upon the record, the court could properly find that the position was abolished for economical reasons, and such was the decision.

Besides, the claim of the relator is based upon the theory that the inspection of fire hydrants in the borough of Brooklyn must be performed exclusively by laborers in the fire department. The vice of this theory is that section 104 of the consolidation act of Brooklyn, cited by counsel as authority, contains no such provision. It is not mandatory. It states that the fire commissioner "is authorized to appoint such laborers as may be necessary for the inspection of fire hydrants." This is far from saying that he must appoint them, or that, having appointed them, he must retain them, whether "necessary" or not, or that he may not abolish the positions for economical reasons. The finding of the court that this was the reason for the abolishment of the position of the relator was well within the evidence.

But it is urged that the commissioner could not abolish the position held by the relator and his associate veterans, and at the same time retain other laborers, and also appoint new ones. The difficulty with this claim is that the relator was appointed for special duty in connection with fire hydrants, and it does not appear that the other laborers, who were retained, were exclusively charged with the same duties as the relator. As the relator was removed in January, 1898, our decision rests upon the laws then existing, and has no relation to subsequent legislation in chapter 186 of the Laws of 1898, and chapter 370 of the Laws of 1899 (commonly known as the "White Law").

Judgment dismissing alternative writ of mandamus affirmed, with costs. All concur.