Argued 16 December, 1901 ; decided 6 January, 1902.

## VENABLE *v.* POLICE COMMISSIONERS.

[67 Pac. 203.]

NATURE OF QUESTIONS TO BE SETTLED BY WRIT OF REVIEW.

1. On a writ of review only law questions arising on the record can be determined—no testimony can be received.

MUNICIPALITY—POWER TO REMOVE POLICE OFFICER.

2. Under a city charter providing for a board of police commissioners who shall perform the executive functions of the city in the organization and management of the police department, and requiring that all appointees on the force shall hold their offices during good behavior, and that no officer shall be removed on political grounds, or for any reason except inefficiency, misconduct, insubordination, or violation of law, after a fair trial, the police commission has the power to reduce the size of the force to keep the expenditures within the estimated revenues, and to summarily remove officers for that purpose, the provisions in reference to trial not applying to such removals.

PUBLIC EMPLOYEES—IMPLIED POWER OF REMOVAL.

3. Where a public board, as a municipal police or fire board, is given the power to appoint employees, there goes with it an implied power to remove them, unless there is a limitation elsewhere in the law creating the board.

REDUCING POLICE FORCE BY DISMISSALS.

4. The record of a municipal police commission showed that on a certain day the commission proceeded to organize the department by the appointment of fifty-six men on the police force, including plaintiff, which was the only order creating the offices which such appointees should fill. Thereafter the plaintiff and nine other officers were removed ; the record reciting that they were dismissed from service, though they had performed their duties, there being no funds for their payment. *Held* that, as the offices filled by such appointees were created merely by their appointment, the later entry showing their dismissal was a reduction of the police force by the abolition of the offices held by such appointees, and was not a mere dismissal of the officers without trial.

REMOVAL OF POLICEMEN FOR POLITICAL REASONS.

5. Ten officers were discharged on June 23, which was shortly after a municipal election, the order of discharge reciting that they had performed their duties, but were removed by the commission for want of funds.  On June 30 one of the removed officers was appointed special policeman, and on August 2 four others were appointed as members of the force, and on September 2 two others were reappointed.  There were no appointments made in place of the other officers removed.  *Held,* insufficient to show that any of the officers were removed for political reasons.

Mr. Chief Justice BEAN dissents.

From Multnomah :  ALFRED F. SEARS, JR., JOHN B. CLELAND and MELVIN C. GEORGE, Judges, in joint session.

Writ of review by Charles Venable against the Board of

Police Commissioners of the City of Portland to determine the validity of his removal from the police force.   From a judgment in favor of plaintiff, defendant appeals.   The judgment was rendered by Judges Sears and Cleland, Judge George dissenting.   ·                                     Reversed.

For appellant there was a brief over the names of *Joel M. Long,* City Attorney, and *Ralph R. Duniway,* with an oral argument by *Mr. Long.*

For respondent there was a brief over the names of *Gammans & Malarkey* and *John F. Logan,* with an oral argument by *Mr. Logan* and *Mr. Dan J. Malarkey.*

Mr. Justice Wolverton delivered the opinion.

This is a special proceeding to review the action of the board of police commissioners, whereby the plaintiff was relieved from the office of regular policeman of the City of Portland. The plaintiff was appointed  November 3, 1899, and continued to discharge the duties of his appointment until June 23, 1900, when he was dismissed by an order of the board, made and entered at a regular meeting thereof, without notice or charges; and it is alleged that by reason thereof the board has exceeded its jurisdiction, and exercised its judicial functions erroneously.   The secretary of the board returned the writ with a transcript of the proceedings had relative to plaintiffs appointment and dismissal, which is, in brief, as follows:

"November 1, 1898.

The board met. * * On motion of Mr. Cohen, J. L. Wells was appointed humane officer."

"November 3, 1899.

Pursuant to adjournment, the board met. * * Mr. Bates moved that the board proceed to organize the department in accordance with the charter by the appointment of the following named men to the police force, which was carried." Those appointed were O. P. Church, Fred Hallett, W. O. Stitt, H. A. Parker, P. Murray, C. L. Du Bois, C. Venable, M. Waller, J. M. Harkleroad, E. W. Cole, and forty-seven others.

"June 23, 1900.

Adjourned meeting of the board. * * The following members of the police department were dismissed from service, there being no funds for their payment; and the commissioners desire to state that, while the officers performed their duties, the action of Mr. Greenleaf, the assessor, in reducing the assessment, made it imperative. * * To take effect June 30, 1900." Those dismissed were J. C. Wells, Charles Venable, the plaintiff, and other persons above-named, except O. P. Church.

"July 30, 1900.

The board met. * * On motion of Commissioner Bates, O. P. Church was appointed special policeman, *vice* Jack Roberts."

"August 2, 1900.

A special meeting of the board. * * On motion of Commissioner McLauchlan, H. A. Parker and E. W. Cole were appointed policemen. On motion of Commissioner McLauchlan, John F. Kerrigan and Frank J. Snow were appointed detectives."

"September 3, 1900.

The chief of police reported having appointed C. L. Du Bois and J. M. Harkleroad regular officers. On motion, the appointments were ratified."

"November 5, 1900.

The board had its regular monthly meeting. * * The chief of police reported having reinstated O. P. Church as a regular policeman on October 25, 1900, and on motion his action was ratified."

"November 5.

* * On motion of Commissioner Rankin, Joe Reising was appointed a regular policeman, to be detailed as humane officer; the appointment to date from November 15, 1900. He served fifty-five days and resigned. Has received no money. Mr. Reising was selected by the Humane Society with the understanding that if the council did not pay his salary, which

the commissioners said would be very uncertain, the society itself would supply it.''

The trial court reversed the order dismissing the plaintiff from service, and directed his reinstatement, from which judgment the board appeals.

1. The plaintiff's contention is that by the act of the board appointing him and others regular policemen they were constituted officers, and that their tenure of office was during good behavior; that they could not be removed for any cause or purpose whatsoever, except for inefficiency, misconduct, insubordination, or violation of law; and that the dismissals were made to subserve political purposes, contrary to the direct inhibition of the charter. Upon the other hand, it is maintained that the board was vested with ample power to so manage and regulate the department as to adapt it to the exigencies of the service, and that it was authorized to reduce the police force upon economical grounds, being charged with the duty of keeping the expenses of the department within the appropriations or funds available therefor, and that the dismissal of plaintiff, with others, was in pursuance of that authority, and not for political reasons. The proceeding being by writ of review, the question must be resolved by the record, as one of law, and no extraneous facts or evidence *aliunde* can be taken into account.

2. The police commissioners are by the charter given plenary power pertaining to the organization, management, and control of the police department. In this respect they stand in the place and stead of the common council, as they are clothed with all the executive functions of the city pertaining thereto. They are authorized to adopt rules and regulations for receiving and hearing complaints against members of the police force; for their removal, suspension, or forfeiture of wages on account of misconduct or negligence in the discharge of their duties: Sections 68, 69, 70, Portland City Charter, 1898. Beyond this, their functions require that, from an economical standpoint, they shall so manage and conduct the affairs pertaining to the department as to keep the expenses

within the revenues appropriated and available for that purpose: Section 32, subd. 1, and sections 51, 71, 217, Portland City Charter, 1898; *Gadsby* v. *Portland,* 38 Or. 135 (63 Pac. 14). The revenues are fixed by the charter, and, after an assessment is made, the amount available may be readily ascertained. In view of these powers and functions imposed upon the board, it was declared that all appointments made thereby should continue during good behavior, and that no officer or member of the department should be removed or reduced in rank or pay upon political grounds, or for any reason except inefficiency, misconduct, insubordination, or violation of law, after a fair trial upon complaint regularly preferred, and reasonable notice: Sections 99-101. These latter regulations are restrictions upon the powers previously accorded, and are to be construed as limiting the power of removal for cause to those several reasons enumerated, but the power to so administer the affairs of the department as to keep the expenditures within the estimated revenues is not thereby restrained or circumscribed. Having the power to organize the police force in the first instance the commissioners have the power to increase or reduce it as the exigencies and proper management may require; and therefore, if the anticipated revenues are insufficient to meet the requirements of an efficient service, they may reduce the force so that the expenditures will not exceed the appropriations, if practicable.

This is a view taken of a like situation in New York, and seems reasonable and sound. It was there enacted that "no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of removal, the true grounds thereof shall be forthwith entered upon the records of the department or board," the object of which legislation was declared to be to prevent removals, except for cause, and then only after an opportunity to be heard. It was adjudged that such enactment had no application to the case where a clerkship was abrogated, because there was no further need for the services, or for the lack of

available funds with which to meet expenses. In another case it was said that the provision has no application to a case where the incumbent was dismissed for want of funds, or in order to reduce expenses: *Lethbridge* v. *City of New York*, 133 N. Y. 232, 237 (30 N. E. 975); *Langdon* v. *Mayor of New York*, 92 N. Y. 427; *People ex rel.* v. *Board of Fire Com'rs*, 72 N. Y. 445; *Moores* v. *State ex rel.* 54 Neb. 486 (74 N. W. 823).

3. It is urged that the board is not accorded the power of removal by way of distinguishing some of the cases where it appears that such a power was expressly given by statute. But the authority is implied from the power of appointment, where the tenure of the office is not otherwise defined, unless restrained or limited by some other provision. We quote the language of the cases: ''The power to appoint to office or place where the term and tenure are not defined necessarily carries with it the power of removal'': *People ex rel.* v. *Board of Fire Com'rs*, 73 N. Y. 437, 441. ''In the absence of restraints imposed by the constitution or by statute, the power of appointment implies the power of removal, when no definite term is attached to the office by law'': *People ex rel.* v. *Lathrop*, 142 N. Y. 113, 116 (36 N. E. 805). ''With respect to the tenure or duration of public employment such as the relator had at the time of his dismissal (a member of the park police of the City of New York), the general rule is that where the power of appointment is conferred in general terms and without restriction, the power of removal, in the discretion and at the will of the appointing power, is implied, and always exists, unless restrained and limited by some other provision of law'': *People ex rel.* v. *Robb*, 126 N. Y. 180, 182 (27 N. E. 267). So that we need not look further for the power of removal. It exists by implication, unless restrained by some other provision of the charter.

4. In November, 1898, J. L. Wells was appointed humane officer; and on the third of November, 1899, the board proceeded to reorganize the department by appointing fifty-six men upon the police force, among whom were O. P. Church and the plaintiff. This is apparently all there was of the or-

ganization,—the simple appointment of these men as regular policemen. The record of the board of June 23, 1900, is to this effect: ''The following members of the police department were dismissed from service, there being no funds for their payment; and the commissioners desire to state that, while the officers performed their duties, the action of Mr. Greenleaf, the assessor, in reducing the assessment, made it imperative.'' Then follow the names of the persons dismissed, among whom were the plaintiff, J. L. Wells, and eight others. So it appears that the dismissal or removal from service of these men was no more informal than their appointment. Now, if this was a reduction of the police force, and not a sheer removal of the incumbents, and such reduction was for economical reasons, it must be considered, under the authorities, legitimate and valid; and this depends upon whether the mode adopted for such reduction was regular and competent for the purpose, and upon the construction to be given the language of the board in making the removals as to its intention in the premises. The only creation there was of any office was the appointment of these men to serve in the capacity of regular policemen. The board had not, so far as the record shows, previously adopted any rule or regulation, as it is probable it was empowered to do, creating or establishing any office by the title of regular policeman, or designating the number that should constitute the police force. So there were no offices to be filled at the time of the appointment, and none exist now, except as the appointments authorize the incumbents to assume the title and discharge the duties pertaining thereto. As the method of creating the offices was by the appointment of the officers solely, the removal of the incumbents was effective for their abrogation, so that the police force as thus organized was reduced by the number of regular policemen dismissed from service. No more formal or particular method could be required to be observed in the reduction of the force than in its establishment or increase.

5. Was it the purpose of the board in dismissing these men from service to reduce the force because of the lack of suffi-

cient funds to warrant their retention, or, as charged by plaintiff, did it remove them for political reasons? The presumption always obtains that public officials and boards indued with public functions have acted and will act in the discharge of their duties honestly and in entire good faith. So we must assume that the board has discharged its duties uprightly and with good and lawful intent in the present instance, unless the contrary appears. The form of the order, reciting that the members were dismissed from service, with the declaration that they had performed their duties, must be interpreted to mean that they were relieved for no reasons detrimental to their standing as officers. But the reason stated for relieving them is that there were no funds for their payment, and this was sufficient, if true and made *bona fide*. As to the truth of the assertion, there is absolutely nothing in the record to controvert it. The fact that the order was made soon after the general election is a circumstance in support of plaintiff's position, but it is clearly not sufficient within itself to impute bad faith. It is asserted, however, that other men were subsequently appointed in the stead of those dismissed, and that this indicates unmistakably the evil intent with which the board acted in the first instance. Now, if we are permitted in this kind of a proceeding to take into consideration the subsequent records in connection with the original order, for the purpose of ascertaining with what intent the latter was made, —a proposition about which there is some doubt,—we find that on July 30, a month afterwards, O. P. Church was appointed as a special policeman, *vice* Jack Roberts. He is not complaining, however, and the incident throws no light upon the original order of dismissal. On August 2, Parker and Cole were reappointed regular policemen, and John F. Kerrigan and Frank J. Snow were appointed detectives. No inference can be drawn from the fact of reappointing Parker and Cole that they and others were relieved for political reasons. Indeed, the reasonable deduction would be quite to the contrary. Kerrigan and Snow were appointed to a different service.

Whether the position is one of higher grade than a regular policeman, and should have been made from the regular force, is not disclosed, but the fact of their appointment in no way impeaches the good faith of plaintiff's dismissal. On September 2, Du Bois and Harkleroad were reappointed; and on November 5, Church was reinstated, and Joe Reising appointed as a regular policeman, to be detailed as humane officer at the instance of the Humane Society, and has received no pay from the department for his services. This constitutes the whole record. Of the ten dismissed from service, four have been reinstated, two are not complaining, while four are prosecuting writs of review for their reinstatement. Of these latter, none others have succeeded to their posts of duty, so it cannot be said that they have been displaced to make room for men more congenial politically with the board, and it is difficult, if not inimical to reasonable deduction, to extract from the record, in the face of the presumption of good faith primarily to be accorded the acts of the board, that these dismissals were made for political reasons.

True, it was the indubitable purpose of the legislature to extend civil service rules to the police and fire departments of the City of Portland,—a commendable and meritorious policy to adopt,—and the charter provisions relative thereto should be vigorously and scrupulously observed and executed; but it has never been the purpose of civil service reform to hamper or cripple the public service, so that it may not be conducted for the best interest of the state or municipality concerned. The legislature has not promulgated any specific rules for the organization, management, and control of the police department, nor has it designated the number of offices to be established, the grades thereof, or pointed out the method for the selection of special officers for dismissal where a reduction of the service is contemplated; and we are not advised of any that the members of the police commission have adopted for the regulation and government of these matters. Perhaps they have adopted none, or possibly have failed in this respect to exercise the power accorded, or to observe the rea-

sonable mandate of the charter; but unless we can say that they have exceeded their jurisdiction, or exercised their judicial functions erroneously, to the injury of the plaintiff, we are powerless to give relief in this kind of a proceeding.

The record does not disclose an excess of authority, and hence the judgment of the circuit court will be reversed, and the cause will be remanded, with directions to dismiss the writ, and it is so ordered.

MR. CHIEF JUSTICE BEAN, dissenting.

As the charter does not specify the number of officers or members of the police force, but makes it the duty of the board of police commissioners, with the funds derived from an annual tax of not to exceed one and three-quarter mills (Laws, 1898, p. 109, § 32; Laws, 1898, p. 180, § 217), to organize, govern, and conduct a police force, with a chief, one or more captains, detectives, etc., and "a suitable force of regular policemen"(Laws, 1898, p. 125, § 68; Laws, 1898, p. 127, § 70), I concur in the view that it is within the power of the board to reduce the force whenever the public revenues demand. I think, however, this should be done by direct resolution or order abrogating the extra offices, and not by the mere removal of the officers. As I read the charter, the board is absolutely prohibited from removing a policeman, except for certain enumerated causes, which do not include a want of funds: Laws, 1898, p. 139, § 101. So long as the office exists, the appointee is entitled to hold it, unless removed in the manner provided in the charter, and for the causes specified. The record of the police board recites that the plaintiff and other policemen named were "dismissed from service," and I doubt whether it can be properly held to show an intention to reduce the force or abrogate the offices they held, especially in view of the subsequent action of the board in reappointing some of the persons dismissed, and in appointing others, without an order increasing the force.            REVERSED.