FREDERICK E. LYON, Appellee, v. CIVIL SERVICE COMMISSION OF THE CITY OF DES MOINES et al., Appellants.

**MUNICIPAL CORPORATIONS:** Officers and Employees—Civil Service Employees—Discharge. The city council has plenary power by appropriate resolution to order a good-faith reduction in the number of employees in a municipal department operating under civil service regulations, and may validly delegate to the chief officer of such department the administrative duty to designate, on the basis of efficiency, competency, and length of service, and without the preferring

of charges, the employees who shall be discharged; and this is true though the employees be ex-soldiers, as the Soldier Preference Act has no application to a case where an office is abolished.

Headnote 1: .43 C. J. pp. 600, 914, 918.

Headnote 1: 4 A. L. R. 207; 5 R. C. L. 613.

*Appeal from Polk District Court.*—J. E. MEYER, Judge.

MARCH 8, 1927.

REHEARING DENIED JULY 1, 1927.

Action in certiorari to test the legality of certain proceedings of the city council of the city of Des Moines and acts of other city officers. The facts are fully stated in the opinion. The writ issued by the district court was sustained, and the defendants appeal.—*Writ annulled.*

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, Don G. Allen,* and *George W. Vest,* for appellants.

*George A. Wilson, Casper Schenk,* and *George M. Faul,* for appellee.

STEVENS, J.—I. This is an action in certiorari, commenced in the district court of Polk County, to test the legality of a resolution of the city council of the city of Des Moines, reducing the number of firemen employed in said city from 202 to 180, and also to test the legality of the acts of the superintendent of public safety, the chief of the fire department, and the civil service commission of said city, in relation thereto. The principal return to the writ of certiorari issued in said cause was made by the civil service commission. From the return of this body it appears that, on April 26, 1926, the city council adopted a resolution reducing the number of firemen employed by the city of Des Moines from 202 to 180, and directing the chief of the fire department to carry out the terms of said resolution, which is as follows:

"That, inasmuch as funds are not available for the current year to maintain the personnel of the fire department, as now

organized, it is necessary to reduce the number of men now employed by twenty-two (22), and such reduction is hereby made, and the chief of the fire department is hereby authorized and directed to make the reduction in his force accordingly and to carry this resolution into effect."

It further appears that, on April 30, 1926, the chief of the fire department notified the appellee, Frederick E. Lyon, and twenty-one other employees of the department, of their dismissal (the dismissal of the others not being involved in this appeal), accompanying said notice with a "certificate of honorable discharge," which certificate is as follows:

"Certificate of Honorable Discharge.

"Inasmuch as the city council of the city of Des Moines, in the public interest, has, by resolution duly adopted, reduced the number of employees in the fire department, Frederick E. Lyon, a member of said department, is hereby dismissed from further service, and this will certify that his term of employment has extended over a period of —— years, and that he has been honorably discharged. Dated at Des Moines, Iowa, this —— day of April, 1926. Will Burnett, Chief of Fire Department."

It also appears that, on April 30th, the chief of the fire department reported the names of the employees dismissed, to the superintendent of public safety, who promptly indorsed his approval upon said report; that, on May 3, 1926, appellee filed with the clerk of the civil service commission and the city clerk of the city of Des Moines a notice of appeal from the action of the chief of the fire department dismissing him from the service; that, on May 5th, the chief of the fire department filed a statement of the reasons for the dismissal of appellee, in the office of the city clerk and the clerk of the civil service commission, which statement is as follows:

"May 5, 1926. To the Honorable Board of Civil Service Commissioners: Sirs: The reason for the discharge of Frederick E. Lyon is the resolution of the city council reducing the number of men in the fire department and ordering the honorable discharge of twenty-two men, which has been done according to civil service law covering reductions in the force. Respectfully reported, Will Burnett, Chief Fire Dept."

Later, appellee filed an affidavit relating to his dismissal in the office of the civil service commission and of the city clerk, which affidavit is as follows:

"State of Iowa, Polk County, ss:

"I, Frederick E. Lyon, being first duly sworn, on my oath depose and say: That I served as a member of the fire department for more than 6 years; that on May 1, 1926, I was handed a communication from Will Burnett, chief of the fire department, discharging me from said department; that on the 3rd day of May, 1926, I filed with the city clerk of the city of Des Moines a notice of appeal and a request for a hearing by the civil service commission; that notwithstanding said notice of appeal no charges or specifications of charges have been filed as provided by Section 5706 of the Code of 1924; that in accordance with said section this affiant is entitled to an order reinstating him as such fireman. Frederick E. Lyon.

"Subscribed and sworn to before me this 18th day of May, 1926.    Margaret P. Oliver, Notary Public in and for Polk County, Iowa."

A hearing of the appeal was had before the civil service commission, without the introduction of testimony, the hearing resulting in the approval by that body of the action of the chief of the fire department. The other officers adopted the return of the civil service commission without substantial addition.

After the separate returns of the several officers had been filed in the office of the clerk of the district court, in obedience to the writ, appellee moved the court to require that certain defects therein be corrected. The motion was sustained in part and overruled in part. An amendment to the return of the chief of the fire department, giving a complete list of the names and length of service of all firemen employed by the city, together with a statement of the qualifications of appellee as a fireman, was filed in response to such notice.

Following a trial in the district court, judgment sustaining the writ of certiorari, annulling the dismissal of appellee from the service, and directing the city to pay his salary during the period since his dismissal, was entered by the court. All of the defendants appeal.

As is well known, the city of Des Moines has adopted the

commission form of government.   It is conceded that appellee and several of the other firemen dismissed from the service are honorably discharged soldiers of the World War or other wars. The briefs and argument of counsel, which are enriched by the copious citation of authorities, cover a range of subjects far more extensive than appears to us necessary to the proper decision of the controversy.   As we view the case, its determination depends upon the answers to the following questions:

(a)   Did the legislature of this state have the power to confer authority upon the city council to, by the adoption of a resolution to that effect, reduce the number of employees in the fire department?    (b)   If so, by whom and in what manner shall the reduction be made, if not by the city council?    (c)   May a soldier employed in such department be dismissed therefrom, and if so, may his dismissal be accomplished without the filing of charges against him and a hearing before the proper body or officer of the city upon such charges on due and proper notice to him?    (d)   Is a soldier in such case entitled to preference over non-soldier employees of greater competency and efficiency?

For convenience, we here quote in full the statutory provisions (Code of 1924) bearing directly upon the questions before us:

"Sec. 5712.   Whenever the public interest requires a diminution in the number of employees under the civil service, the same may be reduced by resolution of the council.   In case it thus becomes necessary to discharge any such employees, the persons discharged shall be those who have shown the least efficiency and competency and whose service has been of the shortest duration.   The persons so discharged shall receive a certificate showing the length of their service, and that they have been honorably discharged."

"Sec. 1159.   In every public department and upon all public works in the state, and of the counties, cities, towns, and school boards thereof, including those of cities acting under special charters, honorably discharged soldiers, sailors, marines, and nurses from the army and navy of the United States in the late Civil War, Spanish-American War, Philippine Insurrection, China Relief Expedition, or war with Germany, who are citizens and residents of this state, shall, except in the position of school teachers, be entitled to preference in appointment, employment,

and promotion over other applicants of no greater qualifications."

"Sec. 1160.    The persons thus preferred shall not be disqualified from holding any position hereinbefore mentioned on account of age or by reason of any physical disability, provided such age or disability does not render such person incompetent to perform properly the duties of the position applied for."

"Sec. 1161.    When such soldier, sailor, marine, or nurse shall apply for appointment or employment under this chapter, the officer, board, or person whose duty it is or may be to appoint or employ some person to fill such position or place shall, before appointing or employing anyone to fill such position or place, make an investigation as to the qualifications of said applicant for such place or position, and if the applicant is of good moral character and can perform the duties of said position so applied for, as hereinbefore provided, said officer, board or person shall appoint said applicant to such position, place, or employment."

"Sec. 1163.    No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari."

We do not understand appellee to question the power of the legislature to authorize the city council to effect a reduction in the number of employees in any 'department thereof.

Section 5712 does confer authority upon city councils to do exactly what it, in the present instance, attempted to do.    All appointive officers in all cities of this state having a population of 8,000 or over, and all employees of the several departments thereof, are under, and entitled to, the protection of Chapter 289 of the Code of 1924, relating to the civil service, so far as applicable to the particular case in hand.    Counsel upon both sides have apparently assumed that, when the city council, by resolution, authorized and directed the chief of the fire department to select the personnel of the employees to be dismissed, and to dismiss them, it attempted to delegate authority to such officer to exercise functions and to perform duties devolving upon the

council. Much discussion is devoted to the nature or character of the act to be performed: that is, as to whether it is legislative, administrative, or judicial. The question, as it appears to us, is quite free from doubt.

It is elementary that, unless expressly or impliedly restrained by statute, a municipal corporation may, in its discretion, determine for itself the means and method of exercising the powers conferred thereon. *State ex rel. Ellis v. Tampa Water Works Co.*, 56 Fla. 858 (47 So. 358).

Surely, no express limitation is placed upon the authority of the city council by Section 5712, nor, in our opinion, is any limitation thereon to be implied from the language or purpose thereof. The purpose for which the statute was enacted was to enable municipalities having a population of 8,000 or over to meet the exigencies of such municipality, economic or otherwise, under the civil service laws of this state.

Section 6565 of the Code of 1924 provides that:

"The executive and administrative powers, authority, and duties in such cities shall be distributed into and among five departments, as follows: 1. Department of public affairs. 2. Department of accounts and finances. 3. Department of public safety. 4. Department of streets and public improvements. 5. Department of parks and public property."

Section 6566 provides that the mayor shall be the superintendent of the department of public affairs, and that each councilman shall be superintendent of the particular department or combination of departments to which he was elected, as the case may be. Section 6571 confers authority upon the council to determine the powers and duties to be performed by each of the heads of departments, and to assign to them such department or departments as the council may, in its discretion, deem best.

Section 47 of the civil service ordinance of the city of Des Moines only is before us. We gather therefrom that assistants and employees of each department of the city are taken from the civil service list and assigned to duty by the head of such department, who is also authorized to discharge such assistants or employees, under the regulations of the laws and rules of the civil service. See, also, Section 5703 of the Code of 1924, which is as follows:

"The person having the appointing power as provided in

this chapter, or the chief of police and the chief of the fire department may peremptorily suspend or discharge any subordinate then under his direction, for neglect of duty, disobedience of orders, or misconduct. Chiefs of police and fire departments of cities under the commission plan shall report suspensions or discharges made by them to the superintendent of public safety within twenty-four hours thereafter. * * * Such report shall be in writing, stating the reasons for such suspension or discharge. The person or body to whom the report is made shall affirm or revoke such suspension or discharge, according to the facts and merits of the case.''

There is nothing in Section 5712 to indicate a legislative intent to constitute the city council a tribunal for the purpose of determining who shall remain and who shall be dismissed from the service when a reduction is to be made in the number of employees in any department of the city. The only power conferred upon the city council by said section is to reduce the number of employees in any department of the city, by appropriate resolution to that effect. The manner and method of carrying out the requirements of the resolution, and by whom, are left to the discretion and determination of the city council.

The legislature did, however, provide the test to be applied in the selection of employees for dismissal; or, in other words, what particular offices were abolished. The language of the statute is as follows:

''* * * In case it thus becomes necessary to discharge any such employees, the persons discharged shall be those who have shown the least efficiency and competency and whose service has been of the shortest duration. * * *'' Section 5712.

The statute further provides that each employee so dismissed shall be given a certificate showing the length of service, and that he has been honorably discharged.

The attempt by the city council to confer authority upon the chief of the fire department to carry into effect the resolution reducing the number of employees in the fire department, amounted to little more than the designation by that body of the logical officer for that purpose. No one was so familiar with the relative qualifications of the employees of his department, or so well fitted to fairly and justly determine who should be dismissed, as the chief of the fire department. We find no sugges-

tion in the record that the action of the city council in reducing the force was not *bona fide*, and for the reasons stated in the resolution, or that the chief of the fire department was actuated by bias, political considerations, or ill will toward any employee. Concerning the method adopted by him in working out the problem, we quote from the amendment to his return as follows:

"While he claims to have a fair knowledge of the disposition and merits of all members of the fire department, he decided not to rely solely on his own judgment in selecting the list of men for dismissal; but, to satisfy himself that he was not misjudging their fitness and qualification, he consulted and advised with all of the commanding officers,—namely, the lieutenants, captains, and assistant chiefs,—relative to the efficiency, length of service, and general qualifications of all the members in their respective companies; and those thus selected for dismissal represent the unanimous opinion of the fire department officials having the matter in charge."

The city council did not attempt to delegate legislative or judicial authority to the chief of the fire department. In designating him to perform the duties assigned, it simply exercised the authority directly conferred upon it by the statute, or necessarily implied therefrom. The authority thus exercised by the chief was administrative in character, and a legitimate function of his office.

II. So far as our attention has been directed to the decisions of the courts in other jurisdictions, they unanimously recognize a distinction between the discharge of an employee by his superior for cause, and the dismissal or discharge thereof where a reduction in the number is sought. The effect of the resolution of the city council was to reduce the number of positions or offices in the fire department from 202 to 180. In other words, 22 offices were abolished. The provisions of Chapter 289 of the Code of 1924, relating to the civil service, are not applicable where officers or employees are dismissed or discharged from the service, to effect a reduction in the number thereof by abolishing the office. *Babcock v. City of Des Moines*, 180 Iowa 1120; *State ex rel. Boyd v. Matson*, 155 Minn. 137 (193 N. W. 30); *Moores v. State ex rel. Shoop*, 54 Neb. 486 (74 N. W. 823); *Colgarry v. Board of Street & Water Comrs.*, 85 N. J. Law 583 (89 Atl.

789); *Venable v. Police Comrs.,* 40 Ore. 458 (67 Pac. 203);
*Heath v. Salt Lake City,* 16 Utah 374 (52 Pac. 602); *Lethbridge
v. Mayor,* 133 N. Y. 232; *People ex rel. Hartough v. Scannell,* 48
App. Div. 445 (62 N. Y. Supp. 930); *Matter of Application of
Lazenby v. Board of Police,* 76 App. Div. 171 (78 N. Y. Supp.
302); *France v. State,* 57 Ohio St. 1; 28 Cyc. 512.

Most of the foregoing cases deal with the right to discharge
officers and employees under the civil service. Some of them,
however, deal with soldier preference laws.

It will be observed from a reading of the sections of the
statute quoted above that, in the employment of firemen, honor-
ably discharged soldiers shall ''be entitled to preference in ap-
pointment, employment and promotion over other applicants of
no greater qualifications,'' and that they shall be removed from
such employment for incompetency or misconduct only after a
hearing upon due notice, and upon stated charges.

We have already pointed out that, when it becomes neces-
sary to discharge employees, in the public interest, and a dimin-
ution in the number has been ordered by the city council, the
employees discharged ''shall be those who have shown the least
efficiency and competency and whose service has been of the
shortest duration.'' The foregoing provision of the statute fully
preserves the preference awarded by law to honorably dis-
charged soldiers. The obvious design of the legislature was to
permit a reduction in the number of employees in a given de-
partment without reducing its efficiency, and to prevent partial-
ity and unfairness in making such reduction. The preference
created in favor of honorably discharged soldiers by the express
terms of the statute applies only when their qualifications are at
least equal to those of other applicants. Employees possessing
''the least efficiency and competency'' are not, under the statute,
although honorably discharged soldiers, entitled to preference.

But what of the provisions of Section 1163, which prohibits
the discharge of any employee having a right of preference ex-
cept for incompetency or misconduct, and after a hearing upon
stated charges and due notice? It is obvious that this statute
was designed to protect employees under the civil service who are
honorably discharged soldiers, from being dislodged to make
room for others, or for political or other reasons inconsistent
with the spirit of the civil service laws. The limitation imposed

upon the power of the employer or head of a department of a municipality, or other public officer, to discharge employees at will, applies only to cases within the purview of the civil service or soldier's preference laws. In the absence of statutes, the right of the employer or head of a department to discharge an employee is absolute. The power to appoint, in the absence of restrictions imposed by law, carries with it the power of removal. 2 McQuillin on Municipal Corporations, Section 558.

The office formerly filled by appellee was abolished by the resolution of the city council. He was dismissed because there was no office for him to fill. Notwithstanding the fact that his office was abolished, was he entitled to have charges preferred against him and notice of hearing thereon, before he could be lawfully removed from the service? Was he entitled to displace some other employee who had not been a soldier, but possessed greater qualifications for the office? We think that Section 1163 clearly has no application to the facts of this case. No charges were preferred against him. The law entitled him to an honorable discharge from the service. A certificate to that effect was given him, and he was fully apprised of the reasons for his dismissal. The notice served upon him, together with the certificate of discharge, fully apprised him of the reasons for the action taken by his superior officer. The statute conferring authority upon city councils to reduce the number of employees in any department of the city contains neither provision nor intimation that notice and a hearing must precede final action. We find nothing in *Butin v. Civil Service Com.*, 179 Iowa 1048, or *Babcock v. City of Des Moines,* supra, or any other decision by this court, to the contrary. The research of counsel, which their briefs disclose was extensive, has failed to yield a single authority to sustain the contention of appellee at this point. The authorities with singular unanimity hold that soldier preference laws are not applicable where the office held by a veteran is in good faith abolished. *Moores v. State ex rel. Shoop,* supra; *Colgarry v. Board of Street & Water Comrs.,* supra; *People ex rel. O'Connor v. Adams,* 133 N. Y. 203 (30 N. E. 851); *State v. Board of Street & Water Comrs.,* 60 N. J. Law 109 (36 Atl. 778); *Matter of Application of Lazenby. v. Board of Police,* supra; *People ex rel. Carll v. York,* 53 App. Div. 429 (65 N. Y. Supp. 1074; *Phillips v. Mayor,* 88 N. Y. 245; *People ex rel.*

*Corrigan v. Mayor,* 149 N. Y. 215; *People ex rel. Hartough v. Scannell,* supra; *Lethbridge v. Mayor,* supra; *Heath v. Salt Lake City,* supra; *Matter of Application of Stutzbach v. Coler,* 168 N. Y. 416 (61 N. E. 697) ; *Venable v. Police Comrs.,* supra.

A few of the cases cited by appellee, however, apparently conflict with the foregoing conclusion. They are, however, we think, clearly distinguishable.

The Supreme Court of Minnesota, in *State ex rel. Boyd v. Matson,* 155 Minn. 137 (193 N. W. 30), held that the abolition of a specified number of offices did not destroy the soldier's right of preference, so far as the service of other employees commenced at the same time or subsequent to his was concerned. The statutes quoted in the opinion do not, in terms, abolish the offices of those having the "least competency and efficiency." This difference here indicated in the statutes distinguishes the Minnesota cases from the conclusion arrived at herein. The result in *Anderson v. Township of Weehawken,* 97 N. J. Law 371 (118 Atl. 208) is entirely consistent with Section 3, Chapter 14, of the Laws of New Jersey of 1907, which prohibits any municipality from abolishing any position or office held by any soldier of the United States who has served in any war, and who has been honorably discharged. The office of the plaintiff in *Cassidy v. Transit Dept. of City of Boston,* 251 Mass. 71 (146 N. E. 357), was not abolished. He was discharged only because there was no immediate work for him to do. The offices abolished by the resolution of the city council, under the authority conferred by Section 5712, were those occupied by the members of the fire department having the least efficiency and competency to serve. To hold that the foregoing statute is not applicable to honorably discharged soldiers would be to enlarge the Soldier Preference Statute beyond the plain terms thereof.

There remains for our consideration only the question as to how the selection of those to be dismissed shall be made. The duty to discharge employees of the designated class is mandatory. No exception is provided or to be implied. Had the right to notice and a hearing been contemplated by the legislature, some additional provision would have been made therefor.

The questions presented by this appeal, involving, as they do, both the public welfare and the welfare of honorably discharged soldiers, have impressed upon us a great responsibility.

We have endeavored to meet it with a proper appreciation of its importance to all concerned. The only element of possible doubt in the case, as we see it, is the provision of Section 5712 relating to the duration of service. We feel sure that the legislature intended thereby to make efficiency and competency the primary consideration, and the length of service subordinate. Equal effect cannot possibly be given to efficiency, competency, and length of service. The one possessing the least efficiency might, conceivably, have to his credit the longest, instead of the shortest, service. The three qualities are not co-ordinate, but primary and secondary.

The right to a review of the questions discussed on certiorari is challenged, but our conclusion avoids deciding it. No illegality is shown in the proceedings, and we are not concerned with questions of jurisdiction affecting the civil service commission or other offices.

We conclude that the writ should be annulled. It is so ordered.—*Writ annulled.*

Evans, C. J., and Faville and Vermilion, JJ., concur.