HORACE A. HEATH, APPELLANT, *v.* SALT LAKE
CITY, RESPONDENT.

1. *Police Department—Abrogation of Office—Dismissal.*

Plaintiff and his assignors were members of the police depart-
ment, and were, on August 29, 1894, dismissed from service by
the chief of police, without charges having been preferred, or
a hearing had, which dismissal was confirmed by the board of
police and fire commissioners September 8, following.   Action
was brought to recover salaries on the ground that by legisla-
tive enactment (sections 7, 20, chap. 37, p. 33, Sess. Laws
1894), providing that "no officer or member of said depart-
ment shall be removed except for cause, and after public hear-
ing before said board upon charges made in writing," the city
council could not, by ordinance, deprive them of office with-
a hearing upon charges preferred.   *Held* that, the city council
having, under legislative authority, created the offices, had the
right to abolish them; that the ordinance abolished the offices;
and that, therefore, the provisions of the statute respecting re-
movals for cause did not apply.

2. *City Ordinances—Validity.*

An ordinance of the city council providing "that the regular
police force of Salt Lake City be, and the same is hereby, fixed
at not to exceed forty-one men, including the captain," is not
void for uncertainty, in that it does not fix the exact number
of men who should comprise the police department.

3. *Ordinance—Sufficiency of Notice Under—Language of—Construc-
tion.*

Where a written notice of dismissal is given by a municipal
officer to other municipal officers, pursuant to an ordinance
abolishing their offices, the language employed in the notice
must be construed with reasonableness and liberality, for the
purpose of giving effect to the intent of the parties.

(No. 885.   Decided Feb. 23, 1898.

Appeal from the Third district court, Salt Lake county. A. N. Cherry, *judge.*

Action by Horace A. Heath against Salt Lake City. Defendant had judgment, and plaintiff appeals. *Affirmed.*

*Moyle, Zane & Costigan* and *J. H. Hurd,* for appellant.

Police officers are state officers, and not officers of the city. *Royce* v. *S. L. City* (Utah), 49 Pac. 290; 1 Dill. Mun. Cor., Secs. 60, 210 and 975; 19 Am & Eng. Enc. Law, 562.

The mere fact that the legislature has provided that the members of the police department shall be paid by the city does not enlarge the powers of the city, in respect thereto, or authorize it to remove or dismiss any member, or abolish his office, for it is perfectly competent for the legislature itself to establish a police department for the city, and compel the city to pay the expenses thereof. 1 Dill. Mun. Cor., Secs 60 and 245; *Marquis* v. *City of Santa Ana,* 103 Cal. 661; Throop on Pub. Officers, Sec. 355.

The city council has no power to remove an officer or abolish an office appointed or created by the legislature, unless such power be clearly conferred by the words of the act—it can never be implied. *People* v *McAllister,* 10 Utah 357; Throop Pub. Officers, *supra; Marquis* v. *Santa Ana, supra;* 1 Dill. Mun. Cor., Sec. 245; *Gratopp* v. *Van Epps,* 71 N. W. 1080.

The police and fire law gave no authority to remove plaintiff, or any of the other members of the police force, except for cause   *Pratt* v. *Board of P. & F. Com.,* 49 Pac. 747; *Gilbert* v. *Board of P. & F. Com.,* 11 Utah 378; *People* v. *McAllister,* 10 Utah 357; *Fitzgerald* v. *New Brunswick,* 47 N J. Law 479; *New Brunswick* v. *Fitzgerald,* 48 Id. 457; *State* v. *Trenton,* 13 At. Rep. 238; *Clark* v. *Cape May,* 14 Id. 431.

If the power of the board to make a removal or to abrogate the offices in question be conceded, yet the steps taken were not an abrogation of the offices, or a removal of the plaintiff, or his assignors. *Gregory* v. *Mayor*, 113 N. Y. 416; Mehhem Pub. Officers, Sec. 453; *State* v. *Jersey City*, 25 N. J. Law 536.

Appellant further contends that the ordinance passed by the city council under the authority of sec. 4 of the act is void for uncertainty. 1 Dill. Mun. Cor., Sec. 96; Id. note, Sec 420, p. 487; *Kearney* v. *Andrews* (N. J ), 2 Stock. 70; Black Const. Law, p. 441; *State* v. *Clark*, 27 Atl. 975; *San Francisco Pioneer Woolen Factory* v. *Brickwell*, 60 Cal. 166; *State* v. *Zeigler*, 32 N. J. L. 262; *State* v. *Cainan*, 94 N. C. 883; *State* v. *Ocean Grove Camp Meeting Co.*, 35 Atl. 794; *Melick* v. *Washington*, 47 N. J. L. 254.

*William McKay* and *D. B. Hempstead*, for respondent.

This action was brought to recover $5,720, with interest, for salaries alleged to be due the plaintiff and seven other officers, who have assigned their claims to him. The court decided the case in favor of the defendant, and the plaintiff appealed. It appears from the record that for a long time prior to August 14, 1894, the plaintiff and his assignors were members of the police department of Salt Lake City, the whole force, as fixed by ordinance, at that time consisting of 49 men, including a captain of police. On that date the city council passed an ordinance fixing the number of the regular police force at not to exceed 41 men, and in pursuance of that ordinance, on the 29th of August, 1894, the chief of police suspended, without pay, the plaintiff and his assignors, the suspension to take effect on or after September 1st following, and continue until action was taken by the police and fire commissioners, and at the same time, notified each of them accord-

ingly, and also the board of police and fire commissioners. On the 8th of September following, that commission confirmed by motion, in open session, the action of the chief of police, and suspended them permanently. No persons have since been appointed to fill any of the places. The plaintiff and his assignors have, ever since their dismissal, or suspension, been ready and willing, and have offered themselves, to perform the duties of the positions which they had occupied, and demand was made for the amount of their claims before the bringing of this action, which was commenced May 1, 1895, about eight months after their dismissal, or permanent suspension, by the board of police and fire commissioners.

After a statement of the facts, as above, BARTCH, J., delivered the opinion of the court:

Counsel for the appellant insist that the law respecting police and fire departments gave no authority to remove the appellant, or any other member of the police force, from office, except for cause, and relies upon sections 7, 20, c. 37, p. 33, Sess. Laws 1894. Section 7, among other things, provides: "No officer or member of said departments shall be removed except for cause and after public hearing before said board upon charges made in writing;" and section 20 reads as follows: "Except in cases herein otherwise provided no officer or member of said fire or police departments shall be dismissed except for cause nor until after trial, and by an affirmative vote of three members of said board. The accused shall be furnished with a written copy of the charges against him at least ten days previous to the day of trial, and he shall have an opportunity to examine witnesses in his behalf and all witnesses shall be examined under oath and all trials shall be public." Evidently, under these provisions, no

authority existed to dismiss or remove a member of the police department from office for the purpose of appointing another person to fill the vacancy, except for cause; and, in order to effect a removal it was necessary to file charges, and afford the accused an opportunity to be heard in his defense. This court so held in *People* v. *McAllister*, 10 Utah, 357, where a similar statute was construed, and the process of removal held to be judicial in its nature. In that case it was observed: "It is not sufficient to say that cause exists. If the process of removal is judicial, it seems clear that the officer has a right to be heard in his defense, to face his accusers, and then, when he has had this privilege, and has accepted the opportunity, and been heard, or has refused such hearing, the council may, in the exercise of its discretion, remove him or not, as the evidence may warrant. It is demanded by the first principles of justice that no person shall be condemned without an opportunity to be heard, and this principle courts have no right to disregard, unless in obedience to the mandate of positive law." See also *Gilbert* v. *Board*, 11 Utah 378, and *Pratt* v. *Board*, 15 Utah 31.

The design of the statutory provision under consideration doubtless was to prevent persons appointed to public service in the police department from being removed summarily, unjustly, and without any valid reason in law. The limitation upon the power of the board of police and fire commissioners in the removal of incumbents was imposed in the interest of the public, and was calculated to secure experience, and consequently more efficient service, by removing the officers as far as possible from the effects of political and other improper influences. Besides, it is but a matter of common justice to any public officer that no attack upon his name and fame shall

be made without an opportunity to be heard. The arbitrary and summary removal of an incumbent to appoint another in his place is likely to draw public attention, and may give rise to implications of inability, infidelity, or dishonesty, which may seriously embarrass him in the pursuit of his usual avocation; and yet such implications might be wholly dispelled if charges were preferred, and an opportunity given for defense or explanation. Where, however, as is claimed by the respondent in this case, the office has been abolished by the power which created it, no such reasons exist. In such event, the presumption prevails that the services which the discharged officer was wont to perform are no longer required by the public, and no implication injurious to the incumbent can arise because of his dismissal, and no explanation or defense can avail him. Nor can it be assumed that an officer like those under consideration herein sustains a pecuniary injury because of the unexpected shortening of his term. It is true, by the abolishing of the office the incumbent loses the right to receive the perquisites which he would otherwise have been entitled to receive, but that risk he assumed when he accepted the office, which was not created for his benefit, but for that of the public, and therefore he cannot be heard to complain on that ground, because it must be presumed that he knew the law applicable to the office when he accepted it. Nor if, as is insisted in this case by the respondent, the office was lawfully abrogated by the city council, could the preferring of charges and the hearing of the incumbents in any manner affect the judgment or action of the commissioners. They were bound to act in obedience to the ordinance, if valid, and could not retain more members in the department than it permitted or directed. In such cases no other cause for removal than the abolishing of the office need

exist, and the provisions of the statute above quoted do not apply. It is clear that they were intended to apply only to cases where the removal is sought unjustly, without cause personal to the incumbent, or arbitrarily, and without sufficient reason, to appoint another person to the office. In *Phillips* v. *Mayor*, etc., 88 N. Y. 245, speaking with reference to a provision of a statute similar to those above quoted, it was said: "The provision has no application to a case like this. This is not, properly speaking, a case of removal within the meaning of the statute. Here the office or clerkship was abrogated, and there was no more need of plaintiff's services. He could not claim that the office or clerkship should be retained for his benefit, and the fire commissioners were not obliged to consult him before abrogating it. And, further, the statute does not apply to a case like this, where the officer is removed, not to make way for another, but because his services are no longer needed, or because there are no funds provided for his payment. The plain purpose of the statute does not reach such a case." *People* v. *Board of Comr's of Public Works*, 60 How Prac. 130; *Langdon* v *Mayor, etc.*, 92 N. Y. 427.

The next inquiry is whether, as contended by the respondent, the offices of the appellant and his assignors were abrogated, for, if they were not, then no removal was effected, because no charges were preferred, nor any opportunity to be heard in defense given; and counsel for the appellant insists that the steps taken by the city council and other officers did not have the effect to abrogate the offices. To determine this question, recourse must be had to the statutory authority of the city council to vacate the positions of members of the police department, and to the action of the council, board of police and fire commissioners, and chief of police in the prem-

ises. Section 4 of the act of 1894 provides: "The police departments of cities of 12,000 or more inhabitants, of this territory, shall consist of the board hereby created, a chief and a captain of police, and such other officers and men as the city councils of said cities shall direct." Under this section the city council of Salt Lake City clearly had the right to direct what number of men should be employed on the police force, and this the council could do by ordinance; and, when its direction was properly made, it became the duty of the board of police and fire commissioners to give it operation and effect, as provided in section 8 of the same act, which reads: "The board hereby created shall supervise and control said fire and police departments, its officers, members, and employés, subject to the ordinances of the respective cities and to the laws of this territory, and shall see that the officers, members and employés thereof faithfully discharge their duties and that the laws, orders and regulations relating thereto are carried into operation and effect." This provision empowers the board of police and fire commissioners to supervise and control the police department, but it makes it incumbent upon the board to enforce the ordinances of the city council respecting that department, and to give effect and operation, through the officers, members, and employés thereof, to the laws, orders, and regulations relating thereto. Section 10, *inter alia*, provides that "the chief of police shall be the executive officer of the police department," and that it shall be his duty "to see that the laws, orders, rules, and regulations" concerning the same "are carried into effect." It will thus be observed that, in accordance with the provisions of the act of 1894, the city council had the power to determine what number of members should constitute the police force, or, in other words, to create the offices

in the police department which might be filled with persons to act in the capacity of policemen; that the police and fire commissioners are a board of supervision and control, and exercise their authority through the officers and members of the department; and that the chief of police is the executive officer to give effect to the laws, orders, and regulations concerning the public service. The city council, having the power to create the offices in the police department, has, in the absence of statutory or constitutional restraint, the power to abolish them. So, likewise, as to the police offices which were created by the city council, under statutory authority, prior to the enactment of the law of 1894. Referring to an office which had been created under statutory authority by the city council of Salt Lake City, this court, in *McAllister* v. *Swan*, 16 Utah 1, said: "The said office was, therefore, a creature of the municipal government, and the same power which created it had the right to abolish it, in the absence of legislative restraint; the office not being created for the benefit of the incumbent, but for that of the public. Such an office, so created, is not an incorporeal hereditament, has not the qualities or character of a grant, and the incumbent cannot be regarded as having such an absolute property in it as will prevent the power which created it from vacating it before the expiration of the term of appointment." "Where the legislature has conferred upon a municipal board the authority to create offices, the board may abolish the offices so created, though the term of the incumbent has not expired." Mechem, Pub. Off. § 466; 1 Dill. Mun. Corp. § 231; *Ford* v. *Harbor Com'rs*, 81 Cal. 19; *In re Bulger*, 45 Cal. 553; *Chandler* v. *Lawrence*, 128 Mass. 213; *State* v. *Douglass*, 7 Am. Rep. 87.

It remains to be seen, by an examination of their pro-

ceedings, whether the action taken by the council, board, and chief of police were such as to effect an abrogation of the offices, and a dismissal of the appellant and his assignors. On August 14, 1894, the council passed the ordinance in which it was provided "that the regular police force of Salt Lake City be, and the same is hereby, fixed at not to exceed forty-one men, including the captain." It is insisted by counsel for appellant that the ordinance containing this provision is void for uncertainty, in that it does not fix the exact number of men who should comprise the police department; and several cases are cited in which ordinances fixing fines and penalties at not to exceed a certain amount have been held void for uncertainty. These cases, however, are not like the one at bar. Nor do they appear to be in harmony with the weight of authority in this country. Dill. Mun. Corp. §§ 337, 341, and notes. The ordinance is a substantial exercise of the authority conferred by the statute as to directing what number of persons should be members of the police department, and we are of the opinion that it is not void for uncertainty. Previous to its passage, the police force consisted of 49 men, including the captain, and, in order to give effect to the ordinance, the chief of police notified in writing the appellant and each of his assignors as follows: "I hereby notify you that you are suspended from duty without pay, to take effect on or after the 1st day of September, 1894, and until action is taken by said police and fire commission," and inclosed with the notice the ordinance in question. A copy of the notice having been submitted to the board of commissioners, that board, in open session, on motion, confirmed the action of the chief of police in "suspending" those policemen "permanently." The appellant insists that this was merely a suspension without authority of law, and that such action did not

abrogate the offices, or in any way affect the right of the incumbents to the salaries thereof. It does not follow, however, from the mere use of the words "suspended" and "suspending" that the offices were not abrogated, or that the parties were not discharged. The intent indicated by the notices of the chief of police and action of the board, and the effect under the ordinance, must govern. Such boards and officers ought not be held to the greatest exactness in the use of language, but the language employed by them should be construed with reasonableness and liberality, for the purpose of giving effect to the intention of the parties. It is difficult to perceive how a suspension without pay, by the chief of police, and a permanent suspension by the board, in view of the ordinance which abolished the offices, could produce a different result than a discharge or dismissal. Evidently the intention was to discharge the eight policemen who were notified, that number of offices having been abrogated by the action of the city council. The intention thus plainly discernible must prevail, notwithstanding the language employed to indicate it was faulty. Few proceedings of this nature can withstand technical scrutiny as to the use of language. *Westberg* v. *City of Kansas,* 64 Mo. 493

The fact that the city council failed to name each officer who should be discharged by reason of the abrogation of a certain number of offices is immaterial. We think the designation of the members of the department who were to be dismissed in pursuance of the ordinance was properly a matter for those who had supervision and control of the department, they being doubtless more familiar with the requirements of the public service. The members designated, having thus been discharged because of the abrogation of their offices, had thereafter no valid claim against the municipality for salaries, in the ab-

sence of any contractual relations existing between them and the municipality, and therefore the appellant cannot recover in this action.

Under the circumstances revealed by the record, they were not entitled to a hearing upon charges preferred, because the statute respecting a removal for cause, hereinbefore considered, does not apply to a case where the office is, in fact, abolished. Nor do the decisions of this court, above referred to, made with reference to the statute, in any way conflict with the views herein expressed. In neither of those cases was the office abolished. Whether or not the discharged men were guilty of laches in waiting many months before asserting what they believed to be their rights is a question which it is not necessary to decide. Nor do we deem it necessary to discuss any other question presented in the record. We find no reversible error. The judgment is affirmed.

MINER, J., and McCARTY, District Judge, concur.