STATE EX REL. QUINTIN, RESPONDENT, *v.* EDWARDS, AS MAYOR, ETC., APPELLANT.

(No. 2,752.)

(Submitted November 30, 1909.  Decided January 7, 1910.)

[106 Pac. 695.]

*Mandamus—Cities and Towns—Police Force—Civil Service Statutes—Violation—Reduction of Force—When Permissible —Good Faith—Findings—Request—When to be Made—When Findings Unnecessary.*

Trial—Findings—Request—When to be Made.
    1.  The district court cannot be put in error for failing to make special findings on a request made nearly two weeks after the cause had

been taken under advisement. In order to render it the imperative duty of the court to make such findings, request for same must be made at the time the cause is submitted for decision.

*Same*—Findings—When Unnecessary.

2. Where the facts in a cause tried to the court were not disputed, but the evidence introduced practically amounted to an agreed statement, formal findings were unnecessary.

*Mandamus*—When Writ will Issue.

3. The writ of mandate does not lie unless it appears that relator has a clear, legal right in himself to have a particular act or duty performed by respondent.

Cities and Towns—Police Force—"Policeman"—"Patrolman"—Definition.

4. *Held,* that the terms "policeman" and "patrolman" are synonymous, and mean one who patrols a certain beat for the protection of property, for the arrest of offenders, and sees that the peace is kept.

*Same*—Powers.

5. Municipalities have only such powers as are expressly conferred upon them by the statute creating them, and such as are necessarily implied or are indispensable for the proper accomplishment of the purpose of their organization, and any reasonable doubt as to the existence of any power must be resolved against the corporation, and the power denied.

*Same*—Police Force—Civil Service Statutes—Removal of Policemen—When Illegal.

6. While, in the absence of restrictions contained in a civil service statute, a city having the power to create an office, thus protected, has also the implied power to abolish it, as when its finances require it; yet if there is an eligible list from which appointments must be made, such as is provided for by the Police Commission Bill (Laws 1907, Chap. 136; Revised Codes, secs. 3304–3317), those members of the force relieved from duty must be relegated to that list, with the right to be returned to active service when the exigencies require it. Therefore, an ordinance the purpose of which was absolutely and finally to remove a police officer from the force after appointment under Chapter 136, *supra,* without putting him on the eligible list, was void.

*Same*—Reduction of Force—When Permissible—Good Faith.

7. Where a city government by ordinance attempts to reduce the police force, the members of which have been appointed under a civil service police statute, by the terms of which they are entitled to hold during good behavior or until they become incapacitated for further performance of their duties, for the alleged reason that the city finances require such action, it must proceed in good faith; otherwise such an ordinance will be held void.

*Same*—Reduction of Force—Lack of Good Faith—Invalidity of Ordinance.

8. The police force of a city, appointed under the provisions of the Police Commission Bill (Chapter 136, Laws 1907), was by ordinance reduced in number, for alleged economical reasons. Subsequently others were appointed as special policemen to fill the places of those discharged, at an expense substantially equal to that which would have been incurred if those discharged had been retained. *Held,* on *mandamus,* that the ordinance was void for lack of good faith in enacting it. Its effect was by indirection to nullify the provisions of the statute and defeat the purpose for which it was enacted.

(MR. JUSTICE HOLLOWAY dissenting.)

*Appeal from District Court, Lewis and Clark County; Frank Henry, Judge of the Fifth Judicial District, presiding.*

APPLICATION for *mandamus* by the state, on the relation of Moses Quintin, against Frank J. Edwards, as mayor of the city of Helena, Montana. From a judgment awarding the writ and an order denying a motion for new trial, defendant appeals. Affirmed.

*Mr. Edward Horsky* submitted a brief in behalf of Appellant and argued the cause orally.

In every jurisdiction where metropolitan police bills have been enacted it has been uniformly held that "The office of a member of the police force may be abolished by the municipality" (*Oldham* v. *Birmingham,* 102 Ala. 357, 14 South. 793; *McCann* v. *City of New Brunswick,* 73 N. J. L. 161, 62 Atl. 191; *Boylan* v. *Newark Police Commrs.,* 58 N. J. L. 133, 32 Atl. 78; *Meissner* v. *Boyle,* 20 Utah, 316, 58 Pac. 1110) ; or the membership of the police department reduced for economic reasons. (*Hudson* v. *Denver,* 12 Colo. 157, 20 Pac. 329; *Neumeyer* v. *Krakel,* 110 Ky. 624, 62 S. W. 518, 23 Ky. Law Rep. 190, 62 S. W. 518; *State* v. *Kansas City Police Commrs.,* 80 Mo. App. 206 (affirmed in (1902), 71 S. W. 215) ; *Moores* v. *State,* 54 Neb. 486, 74 N. W. 823; *City of Lincoln* v. *Yeomans,* 34 Neb. 329, 51 N. W. 844; *Lazenby* v. *Elmira Bd. of Police,* 76 App. Div. 171, 78 N. Y. Supp. 302; *Venable* v. *Portland Police Commrs.,* 40 Or. 458, 67 Pac. 203.) Lack of funds to pay salaries is a good ground for reducing the force (*Lincoln* v. *Yeomans, supra; Lazenby* v. *Elmira Bd. of Police, supra);* and in such case an officer may be dismissed from the service without a hearing and opportunity to show cause against the order of dismissal. (*State* v. *Kansas City Police Commrs.,* 80 Mo. App. 206 (affirmed in (1902) 71 S. W. 215) ; *Moores* v. *State, supra; .Venable* v. *Portland Police Commrs., supra; Heath* v. *Salt Lake City,* 16 Utah, 374, 52 Pac. 602.) A resolution abolishing the office and causing the chief of police to notify the incumbent that he was discharged is effectual as a dismissal. (*Moores* v. *State,* 4 Neb.

(Unof.) 235, 93 N. W. 986.)    A dismissal by reason of reduction of the force or abolition of the office does not violate a rule that no member shall be removed except for cause (*Oldham* v. *Birmingham, supra; Boylan* v. *Newark Police Commrs., supra; Lazenby* v. *Elmira Bd. of Police, supra; Heath* v. *Salt Lake City, supra*) ; or a rule requiring presentation of charges and a hearing. (*Moores* v. *State, supra; Venable* v. *Portland Police Commrs., supra.*)

Relator was appointed a patrolman (a purely local municipal officer) for life, and such appointment and the ordinance, giving him a life tenure are void. In a case in which the officer's title is in question, or where, as in this case, he is seeking to enforce certain rights in a *mandamus* proceeding, he must beyond any question show clearly that he is a policeman *de jure.* Failing in this, he is not entitled to the relief which he seeks as a policeman. (*Moon* v. *Mayor* (1905), 214 Ill. 40, 73 N. E. 408.)    A patrolman is purely a local municipal officer. As such local municipal officer, he comes within the strict definition of who is a municipal officer as laid down by the supreme court of this state; and thereby the ordinance attempting to confer upon a patrolman, a purely local municipal officer, a life tenure of office, is absolutely in contravention of section 6 of article XVI of the state Constitution.    "To hold office during good behavior" is the equivalent of "during life." (*In re Hennen*, 13 Pet. (U. S.) 230, 10 L. Ed. 138; *Blake* v. *United States*, 103 U. S. 227, 26 L. Ed. 462.)    Though a policeman is a state officer and is recognized as such by our state statute, yet no such recognition is extended to a patrolman. Since there is no such office as a patrolman under the statutes of Montana, it exists by virtue of an ordinance, if at all. (See *Stott* v. *City of Chicago*, 205 Ill. 281, 68 N. E. 736; *McNeill* v. *City of Chicago*, 212 Ill. 481, 72 N. E. 450.)    The ordinance makes him a purely local municipal officer, to hold for life, and is therefore in violation of the Constitution and is void.

The power to abolish exists by implication in the grant of the power to create, and unless there is an express restraint upon the power to abolish, such power exists by necessary im-

plication. It was conceded by counsel in the oral argument in the former case (38 Mont. 250, 99 Pac. 940) that the first portion of section 3220, Revised Codes, conferred the power to abolish any office, the appointment to which is made by the mayor with the advice and consent of the council, because the appointment of a policeman is not made by and with the consent of the council; hence said section does not at all apply to such appointments. And likewise it was also then admitted that the second subdivision of said section, to-wit, "but no office created under this title must be abolished by the council," had no application, since the office of policeman or patrolman was not an office created under this title. It follows of necessity, therefore, that the office of policeman or patrolman does not fall under either provision of said section 3220; and this, therefore, leaves the statutes in the situation of imposing absolutely no restraint whatever upon the power to abolish. There thus being no restraint upon the power to abolish, it inescapably follows under the decisions of all the courts everywhere, that the council has such power to abolish.

*Mr. Massena Bullard,* and *Mr. Wm. T. Pigott,* filed a brief in behalf of Respondent. Oral argument by *Mr. Pigott.*

Appellant insists that because respondent was appointed a "patrolman" he was appointed to a purely local municipal office, and hence such appointment for life, and the ordinance giving him a life tenure, are void. (a) The point is not open to discussion. The former decision by this court (38 Mont. 250, 99 Pac. 940) precludes its consideration now. (b) In the absence of any evidence on the subject, the presumption of law would be conclusive that a patrolman is a policeman. Reference to any dictionary will prove the truth of this statement. A patrolman when a member of a police force is a policeman who patrols a particular precinct of a municipality. (See 30 Cyc. 1057; 31 Cyc. 901, 902; *State ex rel. Chapman* v. *Walbridge,* 153 Mo. 200, 54 S. W. 447.) (c) But evidence was introduced showing conclusively that a patrolman of Helena is

a policeman. Sections 50 and 51, Revised Ordinances, declare that patrolmen are policemen. The appellant himself testified that there were six patrolmen or policemen during certain times. Under the statutes and ordinances there can be no doubt that the duties of policemen and patrolmen are the same. But if Quintin was not a policeman with power to preserve the peace of the state, but merely a municipal servant with no official duties to discharge except in respect of the city, he was and is a member of the police force under the police bill, and not an officer within the inhibition of section 6 of Article XVI of the Constitution. Being without that inhibition it was competent for the legislative assembly to prescribe, as it has prescribed in the police bill, that all the members of the police force shall, when finally appointed, hold during good behavior or until permanently incapacitated.

Charters of municipalities, or general statutes under which municipalities are created, are the constitutions of the municipalities. These constitutions are not to be likened to state constitutions, but, on the contrary, bear a close resemblance to the national constitution, in this: The national constitution contains grants of power to the Congress, and the Congress may not exercise powers other than those delegated to or conferred upon it by that organic law. So, also, the statutes under which the city is organized contain the full grant of power which may be exercised by the city, the state and the people of the state reserving to itself and themselves all power and authority not so delegated. (See Cooley's Constitutional Limitations, 231.) The legislature of Montana has by the police commission bill withdrawn from cities, and prohibited the exercise by them of, the power once possessed by them to abolish the offices or places of policemen. If, however, that statute did not withdraw the power, section 3220 of the Revised Codes has done so. This section must, if possible, be given some effect. Presumptively it was framed and passed to serve a purpose. That section is either a limitation upon the power of the council, or it has no effect whatever. In the absence of constitutional or statutory restrictions, an office or place created by a municipality

may be in good faith abolished by the municipality, for the creator may rightly abolish the thing created by it.   Whence the conclusion is manifest that in the absence of section 3220 and sections 2 and 3 of the police bill (Revised Codes, secs. 3305, 3306), the city council would be clothed with authority to abolish any office created by it, including the place held by a policeman.   No statute is necessary to confer power upon a city to abolish an office created by it.   Therefore, section 3220 could not have been intended as a grant of power, for the city possessed power to abolish any office created by it, whether such office was one to be filled by appointment of the mayor with consent of the council, or otherwise.   By that section the legislature has expressed exactly what power the council has touching the abolishment of offices.   It has singled out and particularized one of the powers which the council already possessed, and by this means has declared its will that no power other than that so expressly declared to exist shall be possessed or exercised by the council in the matter of abolishment of offices.

The maxim, *"Expressio unius est exclusio alterius"* is peculiarly applicable to statutes, and more particularly to statutes which are the constitutions of cities.   (See *In the Matter of the Attorney General,* 2 N. M. 49; *New Haven* v. *Whitney,* 36 Conn. 373; *Johnson* v. *City of Great Falls,* 38 Mont. 369, 99 Pac. 1059; 29 Cyc. 274.)

Ordinance No. 736 did not abolish the office or place of respondent.   The ordinance does not purport upon its face to abolish his office or place.   It merely ordains that "until the further order of the council the number of policemen of this city other than officers named in the last section, shall be six (6)."   We contend that it did not abolish the office of anyone.

The council was without power to delegate to appellant authority to abolish respondent's place or office, or to discharge him, and he had no inherent authority so to do.   To choose or select offices for abolishment involves the exercise of legislative power, judgment, and discretion, which have not been confided by the assembly to the mayor, an executive officer.   (Cooley's

Constitutional Limitations, p. 250.)   The state may expressly
authorize delegation of certain powers by the corporation, but
in the absence of such express authority, the council must itself
exercise all discretionary powers. · (28 Cyc. 277, 278, and cases
cited.)

Ordinance No. 736 was passed and approved for the sole
purpose of unlawfully and wrongfully removing and dismissing
respondent and others from the police force, with the intent and
design of violating the police commission bill and section 3220;
and was not passed or approved for economic reasons.   The
just rule is that in abolishing an office (in cases where the
power exists) or discharging an officer, the council must act in
good faith, using "good faith" as meaning an endeavor to keep
within the law, and not by indirection to violate it.   (See 28
Cyc. 445, and notes, 513; *State* v. *Schumaker,* 27 La. Ann. 332;
*Soon Hing* v. *Crowley,* 113 U. S. 703, 5 Sup. Ct. 730, 28 L.
Ed. 1145.)   An ordinance which in effect would annul or evade
the statutes can have no validity.   Ordinances must not only be
in harmony with the statutes, but must also be reasonable, not
arbitrary or oppressive, and courts will declare ordinances to
be void even upon the mere ground that the arbitrary character
of the ordinances amounts to an abuse of the authority dele-
gated to the city.   An oppressive ordinance is likewise void.
(*Mayor etc. of Baltimore* v. *Radecke,* 49 Md. 217, 33 Am. Rep.
239; *State* v. *Commissioner,* 37 N. J. L. 228; Cooley's Constitu-
tional Limitations, p. 243.)

*Mr. Edward Horsky,* in Reply.

Because the ordinances and the council have failed to pre-
scribe the duties of a patrolman, or declared that they are the
same as those of a policeman, it does not follow that the incum-
bent of the office of a patrolman may not perform the duties of
a policeman, or as a policeman *de jure.*   His acts as to third
persons and the public would be valid, but not in a direct pro-
ceeding involving his right or title to the office.   It is not
enough that he shows himself an officer *de facto;* he must show

that he is an officer *de jure.*   (*Stott* v. *City of Chicago, supra;*
*People* v. *City of Chicago,* 210 Ill. 479, 71 N. E. 400; *McNeill*
v. *City of Chicago,* 212 Ill. 481, 72 N. E. 450; *Moon* v. *Mayor,*
*supra; Kenneally* v. *City of Chicago,* 220 Ill. 485, 77 N. E. 155;
see, also, *People* v. *Weber,* 89 Ill. 347; *Kimball* v. *Alcorn,* 45
Miss. 151; *Blake* v. *Sturtevant,* 12 N. H. 567; *Roberts* v. *Holmes,*
·54 N. H. 560; *Dolan* v. *Mayor,* 68 N. Y. 274, 23 Am. Rep. 168.)

Section 3220, Revised Codes, was intended as an express grant
·of the power to abolish any office, the appointment to which is
made by the mayor with the advice and consent of the council,
·except that no office created under the title can be abolished
by the council.   True, the council would have the implied power
·to abolish, without the express grant.   But in every charter of
·a municipality, there are certain powers which, though they exist
by implication, are, nevertheless, also expressly granted.   Thus,
where the city is given charge of streets, the office of street
·commissioner may be created, as an implied power.   (*State* v.
*May,* 106 Mo. 488, 17 S. W. 660.)   So, under the power to
preserve the health, the power exists by implication to create
·a board of health.   (*Boehm* v. *Mayor etc. of Baltimore,* 61 Md.
·259.)   So, a charter providing that it shall be the duty of the
·city clerk "in person or by deputy," to attend all meetings of
the council, gives implied power to create the office of deputy
·clerk.   (*Lowery* v. *Lexington,* 113 Ky. 763, 68 S. W. 1109.)
Also, officers may be created to perform municipal functions,
·though not specifically mentioned in the charter.   (*Collopy* v.
·*Cloherty,* 95 Ky. 330, 25 S. W. 497.)

In reply to the contention that Ordinance 736 did not abolish
the office of relator, we cite *Heath* v. *Salt Lake City, supra.*
"Creating another office, by a new name, and conferring the
·same duties as pertains to the old, operates to abolish the old
·office."   (*Commonwealth* v. *Moir,* 199 Pa. 534, 85 Am. St. Rep.
·801, 49 Atl. 351, 53 L. R. A. 837; *Commonwealth* v. *Reese,* 16
Ky. Law Rep. 493, 29 S. W. 352.)   The unconditional repeal of
·a municipal charter, or the substitution of another with incon-
·sistent provisions, without a clause respecting officers and offices
·as they existed under the former charter, will operate to abolish

all offices thereunder. (*People* v. *Davie*, 114 Cal. 363, 46 Pac. 150; *Board etc. of Frankfort* v. *Brawner*, 100 Ky. 166, 37 S. W. 950, 38 S. W. 497.).

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for a peremptory writ of *mandamus* to the defendant, as mayor of the city of Helena, to compel him to restore the relator to his office as policeman or patrolman upon the police force of the city, from which it is alleged he was unlawfully removed by the defendant. Upon an appeal from a judgment entered upon demurrer to the application and upon motion to quash the alternative writ, it was held that facts sufficient were stated to make a *prima facie* case requiring the defendant to answer. (38 Mont. 250, 99 Pac. 940.) The defendant then filed his answer denying all of relator's allegations, except that Helena is a city of the first class; that defendant has since May 4, 1908, been its mayor; that relator was a patrolman of the city at the time alleged; and that he is qualified to hold the office. He then alleges affirmatively that on May 4, 1908, Ordinance No. 736 was enacted by the city council and approved by himself, providing, among other things, "that until further order of the council the number of policemen of this city, other than officers named in the last section [section 1], shall be six," and "that under and by virtue of such ordinance the number of policemen or patrolmen of said city was reduced from nine to six, and the office or position of relator was abolished, and in pursuance of said ordinance said relator, together with other policemen or patrolmen, was notified by the mayor of said city and accordingly dismissed." The court overruled the relator's motion to strike out these affirmative allegations as irrelevant, immaterial, and impertinent. Thereafter the defendant was permitted to amend the answer by inserting allegations to the following effect: That the city of Helena is, and since the year 1893 has been, indebted in excess of three per cent of the assessed valuation of the property

within its limits; that the funds derived from taxation were not enough to meet the expense of the police department with nine policemen or patrolmen; and that for economic reasons it was necessary to reduce the number from nine to six. A motion to strike out this amendment, as irrelevant and immaterial, was also denied. The reply of relator denies that under Ordinance 736, or otherwise or at all, the number of policemen or patrolmen of the city was reduced from nine to six, or that the office of the relator was thereby abolished, or that in pursuance thereof the relator, either alone or with the other persons, was dismissed. It alleges on information and belief that the ordinance did not, and does not, empower or authorize the mayor or chief of police, or both of them together, to dismiss the relator, and that it was and is, as to relator, null and void. It is denied that the ordinance was enacted for economic reasons. Allegations to the effect that Ordinance No. 736, with other ordinances referred to, were enacted as the result of a conspiracy entered into by the mayor and the city council for the sole purpose of discharging the relator and others from the police force and substituting other appointees in their places, were, upon motion of defendant, stricken out.

From the record we gather the following facts: The defendant went into office on May 4, 1908. During the term of his predecessor, in pursuance of the statute (Chapter 136, Session Laws of 1907; Revised Codes, secs. 3304-3317), the police force of the city had been organized under section 50 of the Revised Ordinances of the city, providing that the police force should consist of one chief of police, one police captain, one police sergeant, one day jailer, one night jailer, and such number of policemen or patrolmen as might be necessary to keep the number up to that established from time to time by action of the council, all to hold office during good behavior or until incapacitated by age or disease. By section 51 it was declared that the number of policemen, other than officers mentioned in section 50, should be nine. The order of the mayor appointing the relator designated him as "patrolman." In an ordinance passed and approved on April 20, 1908, fixing the salaries of all officers and

making appropriations for the year beginning with the term of the defendant, provision was made for nine policemen or patrolmen. The salary of each was fixed at $90 per month, making a total appropriation for this purpose of $9,720. A separate appropriation was made for the salaries of the police captain and chief of police. A special appropriation of $1,000 was made for special police officers. On May 4, 1908, Ordinance No. 736, referred to in defendant's answer, was enacted, amending sections 50 and 51 of the Revised Ordinances, *supra*, by omitting therefrom provision for a police captain, and providing that until further order of the council the number of policemen should be six. On June 3, the ordinance having become operative under section 3268 of the Revised Codes, the relator with two other policemen or patrolmen and the police captain were at once, by direction of the mayor, discharged from the force by the chief of police. On June 9, 1908, the council enacted Ordinance No. 739, which repealed Ordinance No. 736. Immediately after the passage of Ordinance No. 739, and at the same session, the council enacted Ordinance No. 740, amending sections 50 and 51, Revised Ordinances, *supra*, by fixing the number of policemen at seven. In the ordinance making the annual appropriations for the year 1909, provision was made for six policemen or patrolmen, the salary of each being fixed at $90 per month, as before. Provision was also made for special police officers to the increased amount of $3,240. The apparent reduction in the expenses of the city government effected by the course thus pursued, including the salary of the police captain, not provided for because of the discharge of this officer, was $1,920. But notwithstanding the number of the force was thus reduced from nine to seven, from and after June 3, 1908, and up to the time of the trial, there had been in the employment of the city at no time fewer than ten policemen in active service. Six of them had been regularly appointed under the previous administration. The others were put upon the force by the chief of police with consent of the mayor, and apparently with the acquiescence of the council, but without formal appointment by anyone. Some of them were selected from the eligible list,

and others not. They were paid by the city, from month to month, just as were the six having permanent appointments. It thus appears that the actual net reduction of the expense to the city for this service was merely nominal, instead of being $1,920, the difference in the amounts appropriated for the years 1908 and 1909, respectively. At the time these acts were done, the city was indebted to an amount in excess of the constitutional limit of three per cent; but it does not appear that the expenditures for compensation of policemen, including that of special officers, were ever in excess of the amount of the police fund derived from the levy of a special tax and from other sources.

From these facts, which are not disputed, the trial court concluded that the relator was entitled to the relief demanded, and directed judgment to be entered awarding the writ as prayed. The defendant has appealed from the judgment and an order denying his motion for a new trial. In discussing the assignments of error, we more conveniently take them up in the order in which they are noticed in the brief of counsel for the relator.

1. We notice, first, the contention that the court erred in failing to make special findings, as requested by the defendant. There is no merit in the contention. In order to render it the imperative duty of the trial court to make special findings, it is incumbent upon a party, at the conclusion of the evidence and argument in the cause, to make request in writing for findings, and to have the request entered in the minutes of the court. If this is not done, a judgment may not be reversed for want of findings. (Revised Codes, sec. 6766.) Counsel for defendant did not make any request upon the submission of this cause. The evidence and argument were concluded on April 29, 1909. The cause was then taken under advisement. At the request of the trial judge, counsel for both parties thereafter filed briefs. defendant's counsel on April 29, and relator's counsel on May 1. On May 11 defendant's counsel notified the judge by telephone that he had intended to file a reply brief, but had not been able to do so; that he was preparing a request for findings which he desired to have made; and that he would still file a brief if

he could within the next few days. None was filed. There-
after, on the same day, counsel wrote to the judge requesting
him to make findings, and asking that his request be entered in
the minutes. The request was thereafter entered. Under the
provisions of the Code, *supra,* the request should have been
made at the time the cause was taken under advisement. But,
even if it be conceded that the cause was finally submitted upon
notice to the judge that no other brief would be filed, the con-
tention must nevertheless be overruled; for the reason that the
facts were not controverted. Findings would therefore have
been useless. When this condition arises, and the evidence is of
such a character as to furnish ground for one inference only—
that is, in favor of one party or the other—the case is stripped
of questions of fact, and only a question of law remains for
decision. Formal findings are then not necessary, because the
evidence amounts to an agreed statement of facts. (*Helena
Nat. Bank* v. *Rocky Mt. Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep.
628, 51 Pac. 829; *Murray* v. *Hauser,* 21 Mont. 120, 53 Pac. 99.)

2. Contention is made that it appears from the evidence that
the relator was appointed a patrolman, and not a policeman, and
that, since a patrolman is purely a local officer, the appointment
under the ordinance giving him a life tenure, as well as the
ordinance providing for his appointment, is void. If this is so,
the relator is not entitled to relief, because it is apparent that,
if he did not by his appointment become a member of the
police force within the meaning of the statute, he was not at
the time of his removal even a *de facto* officer, and hence the
defendant does not owe him the duty to restore him; for *man-
damus* will not go unless it appears that the relator has a clear
legal right in himself to have the particular act or duty in
question performed by the defendant. (*State ex rel. Breen* v.
*Toole,* 32 Mont. 4, 79 Pac. 403.)

The statute in referring to the persons serving on the police
force mentions them as "members" or "officers" of the police
department or police force. The section of the Revised Or-
dinances of the city, *supra,* under which the police department
of the city was constituted, after mentioning certain officers by

a special title, classifies all other members as "policemen" or "patrolmen." As noted above, the order of the mayor, appointing the members of the force designated the relator and all others of equal grade as "patrolmen." In his application for the writ the relator designates himself as a "policeman or patrolman." The argument of counsel is that the sections of the ordinance referred to show that the city council intended to create, and did create, the office of patrolman as well as that of policeman; that the former is distinct from the latter; that, since a patrolman has no public duties to perform under the provisions of the Revised Codes, as has a policeman, he is a local municipal officer merely; that as such he comes within the designation of "municipal officers," as this expression is used in section 6 of Article XVI of the Constitution; and that the ordinance providing for his appointment for an indefinite term, which may exceed two years, is void. In the decision upon the former appeal we held that the statute is not repugnant to this clause of the Constitution, because a policeman is a public officer in that he has duties to perform, other than those pertaining to the government of the municipality for which he is acting, and after he has once been appointed he may not be suspended or removed from office, except as the statute provides. It was assumed, both by the court and the parties, though not decided, that the terms "policeman" and "patrolman" are synonymous, and, in fact, they are generally used synonymously. The word "policeman" is defined as "one of the ordinary police whose duty it usually is to patrol a certain beat for a fixed period, for the protection of property, for the arrest of offenders, and to see that the peace is kept." (Century Dictionary.) A "patrolman" is "a member of the police force of a town or city, who patrols a certain beat; a policeman." (Id.) The word "policeman" is used sometimes also in a generic sense, and when so used may apply properly to any member of the police force, whatever may be his grade or rank. (Words and Phrases, 5439.) In this sense it was used in the discussion in the former decision in this case, and as intended to include all members of the force having similar duties, without reference to grade or

rank. So the two terms, as used in the ordinance, were evidently used as importing the same meaning. The contention of counsel is therefore overruled. ·

3. It is said by counsel that the city council is vested with the implied power to abolish any office created by it, except in so far as it is expressly prohibited from doing so by some provision of the statute; that its purpose and intention in enacting Ordinance 736, *supra,* was to abolish the offices of police captain and of the three policemen or patrolmen whose names were dropped from the list; and hence that the relator has no cause to complain. By section 3304 of the statute every city in the state is required to have a police department. The mode by which it must be organized is pointed out in sections 3305, 3306, 3307, and 3308. Under section 3305 the mayor must make all appointments from the eligible list, and has the power to suspend or remove from office any member of the force, subject, however, to the provisions of section 3308. In so far as he is not restrained by the provisions of the Act, other laws of the state, or the city ordinances, he shall make rules and regulations for the government and discipline of the force. The city council may by ordinance make additional regulations not inconsistent with the Act or any law of the state for the government of the police department and regulating the powers and duties of the officers and members. (Section 3314.) Under section 3308 the mayor or the chief of police, subject to his approval, may suspend any policeman for a period not exceeding ten days in any one month without trial or hearing. But the power to make permanent removals is not expressly vested in anyone, except after a hearing and conviction, upon charges in writing, preferred to the examining board. Upon a conviction, the mayor may suspend without pay for a definite time, or impose a fine, or remove, at his discretion; for section 3308 declares: "No member or officer of the police force in cities of the first class shall be discharged without a hearing or trial before said board," etc. This is the only provision in the statute on the subject. Neither in this nor in any of the other sections do we find the express power granted to abolish any office

or to dispense entirely with the services of any officer. The statute authorizing the creation of municipalities is the charter of their powers; and the rule of construction applicable is that they have only such powers as are expressly conferred and such as are necessarily implied or are indispensable in order to properly accomplish the purpose of their organization. Any fair and reasonable doubt as to the existence of any power is to be resolved against the corporation and the power denied. (Cooley's Constitutional Limitations, 6th ed., p. 231; Dillon's Municipal Corporations, sec. 55; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249.) "For all purposes of jurisdiction corporations are like inferior courts, and must show the power given them in every case. If this be wanting, their proceedings must be holden void whenever they come in question, even collaterally." (*Dunham* v. *Trustees of Rochester*, 5 Cow. 465.) "Municipal by-laws must also be in harmony with the general laws of the state and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-laws must give way." (Cooley's Constitutional Limitations, 6th ed., p. 239.) The reason for the rule is that it must be presumed that the state has granted in clear and unmistakable terms all that it intended to grant at all. (Cooley's Constitutional Limitations, p. 233.)

Applying this rule to the statute here, it would seem that in the face of the express provision found in section 3308 it was the intention of the legislature to deny the power to the municipality to remove any member of the police force, either by abolishing his office or otherwise, except upon conviction of a violation of his duty or for incompetency resulting from disease or advancing age. This view finds support in the purpose sought to be accomplished by the legislature in enacting the statute. This was to withdraw the police force, so far as possible, from the control of partisan political influences, and put it under civil service rules; so that, when the members of it were once finally appointed, they might remain in office during good behavior or until they became incapacitated for service. The result sought was improvement in the service through the

experience and proficiency acquired by a long tenure in office, and by a removal of the fear, which was always present under the old statute, that the incoming of a new administration meant loss of office for every member who had not shown himself a zealous partisan during the campaign preceding its election, or during the primaries, conventions and elections of the prevailing political party generally.

But when we come to examine the decisions touching the subject, they seem to agree generally upon the proposition that the power to abolish is necessarily implied notwithstanding the provisions referred to, because it cannot be supposed that the legislature intended that after the police force had once been created and its members finally appointed, the number so appointed must continue in office, whether the financial condition of the city or the public needs required their retention or not. It therefore seems to be the rule, as established by the decided cases, that the provision restricting the power of removal found in section 3308, *supra,* refers to removals for lapse of duty and the like, and is no restriction upon the power of the council to abolish as many of the places or offices once provided for, as it chooses, by reducing the number of the members on the force. The following cases are sufficient for illustration, both as to the point that the power to abolish is implied, and as to the point that this result is properly accomplished by an ordinance reducing the number of the police force, or by an order of the board or officer vested with the power to reduce the force: *Heath* v. *Salt Lake City,* 16 Utah, 374, 52 Pac. 602; *Moores* v. *State,* 54 Neb. 486, 74 N. W. 823; *Meissner* v. *Boyle,* 20 Utah, 316, 58 Pac. 1110; *Hudson* v. *City of Denver,* 12 Colo. 157, 20 Pac. 329; *Raley* v. *Warrenton,* 120 Ga. 365, 47 S. E. 972; *Oldham* v. *Birmingham,* 102 Ala. 357, 14 South. 793; *City of Chicago* v. *People,* 114 Ill. App. 145; *Boylan* v. *Newark Police Commrs.,* 58 N. J. L. 133, 32 Atl. 78; *Uffert* v. *Vogt,* 65 N. J. L. 377, 47 Atl. 225; *Magner* v. *St. Louis,* 179 Mo. 495, 78 S. W. 782; *Jones* v. *Willcox,* 80 App. Div. 167, 80 N. Y. Supp. 420; *Board etc. of Frankfort* v. *Brawner,* 100 Ky. 166, 37 S. W. 950, 38 S. W. 497; *Donaghy* v. *Macy,* 167 Mass. 178, 45 N. E. 87;

*Venable* v. *Police Commrs.*, 40 Or. 458, 67 Pac. 203; *Lethbridge* v. *Mayor etc. of New York*, 133 N. Y. 232, 30 N. E. 975; *People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215, 43 N. E. 554; *Fitzsimmons* v. *O'Neill*, 214 Ill. 494, 73 N. E. 797. Some of these decisions, as *Heath* v. *Salt Lake City*, and *Moores* v. *State*, were made under civil service statutes. Others of them were made under statutes which embodied no civil service feature.

It is not surprising, however, that the contention should often be made, as here, that the very notion of a tenure of office during good behavior, which means during active life, is wholly inconsistent with the notion that the grant of power to create such an office, in the absence of express restriction, implies, also, the unrestricted power to abolish the office, and thus put the incumbent out. A better rule would seem to be that, in the absence of an express grant in a statute providing for such tenure and prohibiting removals except for the causes and in the manner mentioned, when the council or the person or body in whom is vested the power to reduce the force does reduce it, it must regard those thus put out of active service as still upon the eligible list and entitled to be returned to active service whenever vacancies occur or the exigencies of the service demand it; otherwise, the offices may be abolished for purely personal or political reasons, in order to rid the force of objectionable members, leaving the way open thereafter to recreate them and fill them with persons against whom there are no such objections. Thus the very purpose of the statute would be defeated, by circuitous means, it is true, but none the less effectively. It must be conceded that, in the absence of restrictions contained in a civil service statute, a city having the power to create an office has also the implied power to abolish it. This rule is recognized everywhere. The concession must also be made that, when the condition of the finances of the city requires it, an office may be dispensed with even though it is controlled by the civil service statute. But this concession is to be made, we think, with the reservation that, if there is an eligible list from which appointments must be made, those who are put out of active service

are relegated to this list, with the right to be returned to duty when the exigencies of the service require it. When we consider the purpose for which the statute was enacted, we cannot avoid the conclusion that the legislature intended to restrict the powers of the city government so as to effectively accomplish this purpose, and this renders the further conclusion unavoidable that it did not at the same time leave undisturbed an implied power which could be used effectively to defeat its purpose. The necessary result of this conclusion is that Ordinance No. 736, *supra*, the apparent purpose of which was to abolish absolutely the office of the relator and remove him finally from the police force of the city, is void, and did not confer upon the mayor the power which he assumed to exercise.

There is another distinct theory upon which the judgment of the district court should be sustained, with reference to which there seems to be no conflict of authority, so far as the decisions have been called to our attention, or we have been able to examine them. The police force cannot be abolished as a whole; for under the first section of the Act (Revised Codes, sec. 3304), the city is required to maintain it. Nor can it be abolished in part, as we have already pointed out. The power of the city extends only to a reduction in its number for economical reasons. This power must always be exercised in good faith. It cannot be used for any other purpose than that for which it was given. Good faith in this connection means an honest endeavor to keep within the law, and not by indirection to violate it. "The rule is general, with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the Acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments." (*Soon Hing* v. *Crowley*, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145.) In the case of *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. 1064,

30 L. Ed. 220, there was called in question the validity of an ordinance of the city of San Francisco, California, prohibiting, among other things, the conduct of a laundry within the city without the consent of the board of supervisors, except it be located in a building of brick or stone. The court held, that it was void because it was not reasonable upon its face, in that it conferred upon the board an arbitrary power to give or withhold consent, and rendered all engaged in the business tenants at will, as to their means of living, under the board. It also held that it was so administered by public authority as to nullify the provisions of the Fourteenth Amendment to the Constitution of the United States, which secures to all the equal protection of the laws. In discussing the administration of the ordinance, the court said: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Here the court infers the bad faith of the state authorities from the facts in evidence showing that in their administration there was a discrimination directed exclusively against a particular class of persons, and hence that the result amounted to an annulment of the constitutional provision.

So in the enactment of ordinances under metropolitan police laws, or in the administration of these laws by boards created by them for this purpose, the courts will look to the facts and determine whether the particular ordinance, or the act of the board or commission, carries out the spirit and intent of the legislation, or tends directly or indirectly to nullify it. In the case of *Kipley* v. *Luthardt*, 178 Ill. 525, 53 N. E. 74, the supreme court of Illinois affirmed a judgment of the circuit court of Cook county, which had issued a *mandamus* to appellant, as superintendent of police of the city of Chicago, to restore the appellee to his position of "Chief Clerk of the Detective Bureau." The facts, as gathered from the statement in *City*

*of Chicago* v. *Luthardt,* 191 Ill. 516, 61 N. E. 410, were that
the appellee had been selected and appointed under civil ser-
vice rules to the office then designated as above, and was per-
forming the duties of the office; that the city council attempted
to abolish the office by changing the name of it to "Secretary
of the Chief of Detectives, rank of Lieutenant," and refusing
to make an appropriation for the salary of appellee, but ac-
tually making an appropriation for the salary of the office
under its new designation; and that thereupon the superin-
tendent of police discharged the appellee, and appointed an-
other person to his place. The court held that the attempt of
the council to dismiss the appellee and deprive him of his posi-
tion was ineffectual, and that his rights remained the same as
if no action had been taken by the superintendent of police or
the council. The case of *City of Chicago* v. *Luthardt* was an
action in *assumpsit* by appellee to recover the amount of salary
accruing between the time of his dismissal and the time of his
restoration to office. In affirming the judgment of the circuit
court in favor of appellee the state appellate court adopted the
theory that inasmuch as the appellee had been removed from
office illegally and appropriation made for the salary of the of-
fice, though the ordinance designated it by another name, he
was entitled to recover; it not appearing that the salary had
been paid to anyone else. The supreme court also adopted
this view. In both of these cases, as well as in the cases of
*People* v. *Kipley,* 171 Ill. 44, 49 N. E. 229, 41 L. R. A. 775,
and *People* v. *Loeffler,* 175 Ill. 585, 51 N. E. 785, the purpose
of the statute is recognized, and in the former it is pointed out
that, in order for this purpose to be fully accomplished, good
faith is required of the officers upon whom devolves the duty
of executing its provisions. The same principle is recognized
in *State ex rel. Attorney General* v. *Schumaker,* 27 La. Ann.
332. In that case the statute authorized the police commis-
sioners to reduce expenses and reorganize the police force to
such an extent as economy and the limitations imposed by law
required, and to this end to discharge such members of the
force as in their judgment might be needful and proper. The

court held that the power granted for one purpose could not be used for another, and that a discharge of one member of the force manifestly for the purpose of making place for another person was unlawful. Such, also, is the rule in the state of New York, though it is held, also, that the power to abolish an office is by implication confided to the discretion of the municipal authorities, to be exercised whenever the exigencies of the public service require it. (*People ex rel. Corrigan* v. *Mayor,* 149 N. Y. 215, 43 N. E. 554.)

Applying this principle to the facts in the case before us, we are impelled to the conclusion that the combined act of the council and the mayor in enacting Ordinance 736 was intended, not to abolish the office of the relator and his associates for economical reasons, but to get them off the force permanently in order to make way for the mayor to fill their places with persons more acceptable to him. This is manifested by the fact that from and after June 4, 1908, when Ordinance 736 became operative under the referendum provision of the Code, *supra,* there were immediately put upon the force men to fill the places of relator and his associates discharged at the same time, and that they and others have since been retained under the name of special officers, for the appointment of whom there is no warrant in the statute, at an expense to the city substantially equal to that which would have been incurred if the relator and his associates had been retained. The effect of the proceedings, as a whole, has been to annul the statute and defeat the purpose for which it was enacted, by the very body to which has been intrusted the power to administer it.

The other contentions made in the brief are not of sufficient merit to demand special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. JUSTICE HOLLOWAY: I dissent. In my judgment the Helena city council had the power to abolish the office held by

relator; that it exercised the power in the enactment of Ordinance No. 736; that relator was discharged from the police force; and that he. is not entitled to relief.

That under these metropolitan police laws the office of policeman is created by the city council, and not by the legislature, is conceded by everyone. That in the absence of statutory prohibition the city council may abolish any office which it creates is held by the authorities uniformly, and is admitted by relator, Quintin. In the brief of his counsel, it is said: "Whence the conclusion is manifest that in the absence of section 3220 and sections 2 and 3 of the police bill (Revised Codes, secs. 3305, 3306), the city council would be clothed with authority to abolish any office created by it, including the place held by a policeman. No statute is necessary to confer power upon a city to abolish an office created by it."

Since in the opinion of the majority of the court there is not any consideration given to section 3220 above, it is fairly inferable that it was not deemed applicable to this case. The first portion of that section merely declares the law to be what it had been for years before the adoption of the statute. It is suggested, however, that to the language therein employed should be applied the maxim, *"Expressio unius exclusio alterius,"* but this contention was determined adversely to relator, in *City of Helena* v. *Kent,* 32 Mont. 279, 80 Pac. 258, and dissenting opinion of Justice Milburn. The last portion of section 3220 contains a prohibition upon the city council. The council shall not abolish any office therein referred to which has been created by the legislature. Beyond this, that section does not go; and in my opinion the section does not have any application in this case, and the city council still has the power to abolish the office of policeman, unless prohibited by the police bill itself. If it is prohibited by that Act from abolishing such office, then it is wholly immaterial for what reason it attempts to do so, since a good reason would not make a void act valid.

Section 2 of the police bill (Revised Codes, sec. 3305), does not contain any restriction upon the power of the city council. It relates to the power and authority of the mayor. Section 3

(section 3306), provides that, after applicants have passed the probationary period and have been appointed policemen, "they shall hold, during good behavior, or until by age or disease they become permanently incapacitated to discharge their duties." But this language is fully interpreted and explained in section 5 of the Act (Revised Codes, sec. 3308), as follows: "No member or officer of the police force in cities of the first class shall be discharged without a hearing or trial before said [examining and trial] board." In other words, these sections merely mean that, so long as the office is in existence, the incumbent shall hold it unless incapacitated by age or disease, or unless he is removed for cause after trial as provided in section 5 of the Act. This is the meaning given like Acts in every state where they have ever been construed. But these sections do not expressly or impliedly prohibit the council from abolishing the office. As said in the opinion of the majority above: "It cannot be supposed that the legislature intended that after the police force had once been created and its members finally appointed, the number so appointed must continue in office, whether the financial condition of the city or the public needs required their retention or not." That, notwithstanding the enactment of this police law, the city council retains its implied power to abolish the office of policeman, is affirmed by every court whose decision has been pressed upon our attention. The list of authorities given in paragraph 3 of the majority opinion, above, evidences to some extent the uniformity with which this doctrine has been asserted. And since many, if not all, of these cases were decided some considerable time before the enactment of our statute it would seem reasonable that our legislature must have adopted this measure with full knowledge of the construction given similar Acts and with the intention that our law should receive the same construction given like measures by the highest courts of the states where the question had arisen. That in adopting Ordinance 736 the Helena city council abolished the offices of three policemen is amply sustained by reason and the cases referred to above.

The city council having abolished three offices, it was the duty of the mayor, who is charged with the supervision of the police force, to designate the particular members who should be dropped from the force, and this was done. In *Heath* v. *Salt Lake City*, 16 Utah, 374, 52 Pac. 602, the court was there considering an Act in all essentials the same as our own, and upon this particular feature said: "We think the designation of the members of the department who were to be dismissed in pursuance of the ordinance was properly a matter for those who had supervision and control of the department; they being doubtless more familiar with the requirements of the public service. The members designated, having thus been discharged because of the abrogation of their offices, had thereafter no valid claim against the municipality for salaries," etc.

In my opinion there is but one restriction upon the power of the city council to abolish these offices, and that is contained in section 1 of this Act: "There shall be in every city and town of this state a police department," etc. The city council could not, therefore, abolish the office of every policeman, but within the restriction contained above, the city council has the authority to say how many policemen shall be employed at any given time. A city of 25,000 population to-day, which depends upon a single industry, might have its population reduced to 500 by the removal of that particular industry, and yet, if in its prosperous days forty policemen were necessary and were appointed under this police bill, the city in its adversity would be compelled to maintain the same force, unless the city council could reduce it. In my judgment, if the power does not exist to reduce the force by abolishing some of the offices, it does not exist at all.

The statute, as I read it, does not expressly or by implication authorize the city council to remove a policeman from active service and, by depriving him of his duties and compensation, effect a reduction of the city's expenses. The status of a policeman thus reduced would defy definition. Certainly, the definition of the word "policeman," as given in the opinion of the

majority above, would not apply to him, and yet he is either a policeman or he is not a member of the police force at all.

It does not aid relator in the least to urge that the city officials are violating the law in employing so-called extra policemen. If a wrong is being done by the employment of such men, the law affords an adequate remedy, but it is wholly beside the question of relator's right.

Rehearing denied February 4, 1910.