Marshall, C. J.
This proceeding in error involves the interpretation of the civil service statutes of Ohio, more particularly Sections 486-17, 486-17a, 486-19, of the General Code, and Section 4 of rule 7 of the civil service regulations of the city of Canton. It is necessary to determine from those sections and other Ohio statutes the powers and duties of the safety director and Civil Service Commission of the city, and their relations toward each other. The difficulty in interpreting these statutes lies not so much in ambiguity of any of their provisions as in the fact of apparent conflict between these statutes and those statutes which confer upon the safety department of a city the power to appoint and suspend employes in the classified public service. It should be stated at the outset that the constitutionality of the civil service statutes is not questioned, and we have reached the conclusion that when those statutes are properly understood all apparent conflict can be obviated.
There is nothing complex or difficult to understand about civil service laws and rules. The fundamental purpose is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations. To carry out this purpose elaborate rules have been formulated, designed to facilitate its operation, but not to extend it beyond its legitimate limits. By the provisions of Section *297 486-2, General Code, it is declared that appointments and promotions in the classified service shall be made only according to merit and fitness, to be ascertained as far as practicable by competitive examination. By the provisions of Section 486-19, General Code, municipal commissions are empowered to prescribe, amend, and enforce rules not inconsistent with the provisions of the General Code of Ohio. All of these statutes and rules must be construed together, and wherever conflicts appear, the same must be reconciled. The most important thing to keep clearly in mind is that the civil service is not a new and independent governmental power, but that, on the contrary, it is a regulation of one of the old, well-established, independent governmental powers—that of appointing and discharging employes in certain branches of the public service.
Whether a police matron is essential to the welfare of the city of Canton is a question of governmental policy, with which the Civil Service Commission has nothing to do. When that question of policy was determined by the city officials who were charged with that responsibility, the Civil Service Commission began to function to determine the fitness of the applicants, and, in accordance with established rules, to make recommendations. When the appointment was made, the duty of the Commission was a continuing one to guard the appointee against unjust charges of misconduct and inefficiency and from being unjustly discriminated against for religious or political reasons or affiliations. If in the course of events it became necessary to determine whether the position should be continued or abolished, that was a question the legislative branch *298 of the city government would have to decide. Again, if the city is confronted by a temporary financial and economic difficulty, or if the legislative branch fails or refuses to make sufficient appropriations, thereby making it impossible for the safety department to meet pay rolls, in such case the problem concerns only the public welfare, and is a political and economic one, and the Civil Service Commission has no duty or responsibility. All these fundamental principles must be kept clearly in mind in construing the laws and rules and applying them to the facts of the controversy.
Section 486-17, General Code, provides in part:
“No person shall be reduced in pay or position, laid off, suspended, discharged or otherwise discriminated against by an appointing officer for religious or political reasons or affiliations.”
All the things forbidden in that language gather around the central thought of discrimination, and the use of the word “otherwise” is without point or meaning, unless the terms “reduced in pay or position,” “laid off,” “suspended,” “discharged,” are understood as forbidden only in the sense that they amount to discrimination. There being no suggestion of discrimination in this case, the language above quoted does not call into requisition the services of the Civil Service Commission. Let us therefore look to the further language of the section:
“In all cases of reduction, lay-off or suspension of an employe or subordinate, whether appointed for a definite term or otherwise, the appointing authority shall furnish such employe or subordinate with a copy of the order of lay-off, reduction or suspension and his reasons for the same, and give such *299 employe or subordinate a reasonable time in which to make and file an explanation,”
It is apparent from this language that there is no occasion for furnishing a copy of the order to the employe, or for such employe to file an explanation, unless there is something about the transaction which calls for an explanation upon the part of such employe; that is to say, unjust charges of inefficiency, misconduct, dereliction of duty, or other delinquency. The record in this case discloses that there is no suggestion of censure or criticism of the relator, and there was therefore nothing which called for explanation on her part. Section 486-17 contains no provision for an appeal to the Civil Service Commission, and nowhere in the statutes is any appeal provided from an order of “reduction, lay-off, or suspension.” This fact is given additional emphasis by the further provisions of Section 486-17, giving to appointing officers power without limit to suspend for purposes of discipline for a period not exceeding 30 days, and further removing from the jurisdiction of the Civil Service Commission all temporary and exceptional appointments.
Section 486-17a provides that the tenure of officers and employes in the classified service shall be during good behavior and efficient service, and that such officers and employes can only “be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office.”
*300 That section further provides that;.
“In all cases of removal the appointing authority shall furnish such employe or subordinate with a copy- of the order of removal and his reasons for the same, and give such officer, employe or subordinate a reasonable time in which to make and file an explanation. Such order with the explanation, if any, of the employe or subordinate shall be filed with the commission. Any such employe or subordinate so removed may appeal from the decision or order of such appointing authority to the state or municipal commission, as the case may be, within ten days from and after the date of such removal. * * *”
This is the only statute granting an appeal to the Civil Service Commission, and it will be seen that such appeal is only granted in removal cases. This cannot possibly be regarded as an inadvertence or omission, because in the preceding section the Legislature has employed only the words “reduction, layoff or suspension,” while in the section under immediate consideration those words are all omitted and only the word “removal” is employed. If it be urged that the Legislature must have intended to grant an appeal in cases of reduction, lay-off, or suspension, the answer is found in Section 486-22, which provides for an investigation in those cases where the Commission has reason to believe that the appointing power has abused its authority in making appointments, lay-offs, reductions, suspensions or removals, and for a report of its findings to the Grovernor, who is thereupon given power to remove forthwith such guilty officer. The right of appeal having been specifically conferred in cases of removal, and having been withheld in that section re *301 lating to reductions, lay-offs and suspensions, the well-known maxim, “Expressio unius est exclusio alterius,” is applicable and conclusive upon the proposition. Section 486-17, General Code, as originally enacted April 28,1913 (103 O. L., p. 707), included the word “discharge” as well as “reduction, lay-off and suspension.” But at the same time that Section 486-17i< was enacted, May 27, 1915 (106 0. L., p. 412), giving the right of appeal in cases of removal, the word “removal” was omitted from certain provisions in Section 486-17. This further confirms our conclusion that the Legislature deliberately intended to grant the appeal only in cases of removal.
The principal complaint of the relator is that she is not only entitled to a trial, but also to an appeal to the Civil Service Commission of the city of Canton. Manifestly, in the absence of any charges, or even criticism, there could be no trial, which fact appears by the allegations of the petition, wherein it is alleged that the city officials “specially disclaimed any intention to charge relator with any misconduct, misfeasance, or nonfeasance in the performance of her duties as police matron.” It is pertinent to add that in the absence of a trial there can be no judgment from which to appeal. In the case at bar the relator was either laid off or suspended, and it does not seem material to determine which of those two terms applies to her case, because it is quite certain that the action of the safety director was only temporary, and that it did not in any sense amount to a removal, or affect the title of the relator to her office as police matron. Its only effect was to place her upon “the current eligible *302 list for the position held at the time of lay-off” and upon a “lay-off and reinstatement list,” and she was at all times entitled to reappointment to the position in preference to all other persons, whenever the temporary financial difficulty should be terminated.
While the foregoing interpretation of the statutes and the rules of the Commission is conclusive of this controversy, we are of the opinion that the same results must be reached, even though an appeal should be provided from all orders of reduction, lay-off, and suspension, as well as orders of removal. Inasmuch as the error proceedings in the Court of Appeals and in this court are based upon the findings of fact hereinbefore stated, we must proceed upon the assumption that there was a shortage of funds, and that the safety fund and the general fund of the city were overappropriated, and that there was in fact no fund to which to look to take care of pay rolls without a reduction in the number of employes. If it be assumed that upon appeal to the Civil Service Commission that Commission would have ordered a reinstatement, the question of conflict between two governmental agencies instantly appears. It is clearly the duty of the safety department to keep its expenditures within the revenues and the appropriations, because money cannot legally be borrowed to defray current expenses. This duty and responsibility clearly devolve upon the safety department, and it is equally clear that no such duty or responsibility rests upon the Civil Service Commission.
The laws and rules pertaining to the civil service must be so construed as to harmonize their provisions with other state laws relating to the powers and duties of city councils and service and safety *303 departments of cities in the creation and abolition of offices and places of employment and in the appointment and discharge of officers and employes. Proper recognition must be given to the principle that in our multiple form of government certain mutual cheeks and balances are provided, while at the same time leaving to each department a.well-defined independence in its proper sphere. Our legislation relative to the administration of our governments, national, state, county, and municipal, has grown to such bulky and unwieldy proportions, and so many offices and employments have been created, with elaborate and complex definitions of powers, and duties, that overlapping and confusion seem inevitable. If in the instant ease this court should feel compelled to yield to the claims of the relator as to the proper construction of the statutes and rules, it would still be necessary to declare that the appointing power is a separate, independent power of the safety department, free from any control on the part of the Civil Service Commission, except that of regulation in determining the fitness of the applicants and in safeguarding appointees against unjust discriminations and unjust accusations.
Any other view would manifestly lead only to endless confusion in the administration of municipal employment. It is, of course, important to properly and impartially administer the civil service rules and requirements, and to recognize the powers and duties of the Commission in the exercise of its proper prerogatives, but it is no less important that the safety department of our municipalities be equally free and untrammeled in the exercise of its proper prerogatives.
*304 Whatever language may have been employed by the Legislature in the enactment of the civil service statutes, that language must be construed in the light of the underlying principles of the Civil Service Commission, as hereinbefore declared, and we cannot agree that the Legislature intended to empower the Commission to interfere with the administration of the city government in such a way that the working forces in the classified service could not be reduced in the interest of public economy and to prevent deficiencies in the public funds. It must be admitted that the responsibility of keeping the expenditures of the city within its income rests with the legislative branch of the city government and the service and safety departments, and not with the Civil Service Commission.
These problems have heretofore been before the trial courts and the intermediate courts of this state, but unfortunately the decisions have not always been uniform. These questions have not been previously before this court for determination, except as they might inferentially be found in the case of Osborn v. City of Columbus, 75 Ohio St., 588, 80 N. E., 1130. That case was decided without opinion, but it was an affirmance of the courts below, and we find the decision of the court of common pleas reported in 3 N. P. (N. S.), 1. There were other questions in that case, and it cannot be positively stated at this time that this court affirmed the lower courts upon the questions which are before the court in the instant case; but it is quite certain that one of the things decided in the court of common pleas, and which was affirmed by this court, was the following principle:
“Where the suspension is made on the ground that *305 the municipality has failed to provide funds to pay for the services of a suspended employee, the suspension is not wrongful, and neither a contract of employment nor the civil service act would furnish him any protection against a suspension on that ground.”
In the Osborn case the answer filed by the city of Columbus alleged that no fund had been provided from which the plaintiff and other suspended members of the fire department could have been paid; that while the city council had fixed the number of firemen, it did not provide the funds from which they might be paid, thereby making necessary a reduction in the force.
There is no lack of adjudication in the courts of other states of the Union on this subject. Many states have civil service statutes almost identical with the statutes of Ohio, arid the decisions of the courts of those states are in perfect harmony with the principles herein declared.
In the case of Venable v. Police Commissioners, 40 Or., 458, 67 Pac., 203, the law is almost identical with Section 486-17a, General Code, and yet it was held that the police commissioners had power to reduce the size of the force to keep the expenditures within the estimated revenues and to summarily remove officers for that purpose, and that the provisions in reference to trial did not apply to removals made under such circumstances.
In the case of Moores v. State, ex rel. Shoop, 54 Neb., 486, 74 N. W., 823, it is found that the statutes of that state are also practically identical. It was nevertheless held that the statute only guarantees the employe the right to vindicate himself from an *306 unjust accusation, and that it does not give “a right to show that the public welfare requires his retention in the public service or that the revenues at the disposal of the board are adequate for the payment of his salary.”
It was further held that the civil service laws created no limitation upon the police or fire departments in reducing the membership of the employes in those departments on economic grounds, and that for such reasons men might be dismissed from the service without a hearing and without an opportunity being given to show cause against the order of dismissal.
In the case of Fitzsimmons v. O’Neill, 214 Ill., 494, 73 N. E., 797, the following declaration appears in the syllabus:
“Section 12 of the Civil Service Act providing that no employe in the classified service shall be removed except for cause, upon written charges, etc., does riot apply to removal from office consequent upon the abolishment of the office itself in good faith and in the interest of economy.”
The decisions of the courts of New York are uniformly in harmony with the views herein expressed. A New York statute provides that no soldier can be removed from an appointive salaried position, except on good cause shown on hearing had, and yet this statute was held to have no application where the person is removed on the ground of economy. (People, ex rel. Corrigan, v. Mayor and Council of Brooklyn, 149 N. Y., 215, 43 N. E., 554.) In the case of Lethbridge v. Mayor, Aldermen mid Commonalty of New York, 133 N. Y., 232, 30 N. E., 975, it was held that statutes which give employes the right to a *307 hearing and an opportunity to make an explanation are wholly inapplicable to a case where removal was made for the reason that the appropriation applicable to the payment of the salary had been expended. It was further held in that case that the right to have an opportunity to make an explanation implies that the cause of removal was for some dereliction or neglect of duty, or incapacity to perform duties, or some delinquency affecting the employe’s general character or his fitness for the office, and that the provision has no application to a case where the incumbent was dismissed for want of funds, or in order to reduce expenses.
Other decisions declaring the same doctrine are Hudson v. City of Denver, 12 Colo., 157, 20 Pac., 329; Sutherland v. Board of Street and Water Com’rs of Jersey City, 61 N. J. Law, 436, 39 Atl., 710; Boylan v. Commissioners, 58 N. J. Law, 133, 32 Atl., 78, and Gardner v. City of Lowell, 221 Mass., 150, 108 N. E., 937. This subject is reviewed in 2 McQuillin on Municipal Corporations, Section 557, where the cases are reviewed and the doctrine editorially approved.
We have no reason to think that, if this entire matter had been submitted to the Civil Service Commission of the city of Canton, its conclusion would have been different from that reached by the court of common pleas in the instant case. The finding of the court of common pleas that the general fund and the safety fund were both overappropriated is not only binding upon this court in this review, but it is impossible that any commission could have found a different state of facts, because those matters are all fixed by records, upon which minds could not reach different conclusions.
*308 It has been suggested by counsel for the relator thgf, although it was admitted that the safety fund was overappropriated, there was a possibility that other revenues might have drifted into the general fund, and that a transfer could have been made. By the provisions of Section 8799, General Code, such a transfer could only be made by the city council upon a three-fourths vote, and, inasmuch as the city council theretofore refused to make sufficient appropriations for the safety fund to meet the pay rolls of that department for the full period, neither the Civil Service Commission nor the courts could control the action of the city council in the matter of transfer of funds.
For the foregoing reasons, the judgment of the Court of Appeals will be reversed, and the judgment of the court of common pleas will he affirmed.

Judgment reversed.

Robinson, Jones, Matthias and Aleen, JJ., concur.